ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

CHRISTINA McCALL (CABN 234139)
Assistant United States Attorney
    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    christina.mccall@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-0515 YGR |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| KENNETH BRESLIN, | Hearing: May 17, 2018 |
| Defendant. | Time: 2:00 p.m. |

UNITED STATES' SENTENCING MEMO
CR 16-0515 YGR

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

PROCEDURAL HISTORY..................................................................................................................1

BACKGROUND ..................................................................................................................................2

A.　Factual Background ................................................................................................................2

B.　The Sentencing Guidelines Calculations ................................................................................9

DISCUSSION .....................................................................................................................................11

A.　The Nature of the Offense.....................................................................................................11

B.　Characteristics of Defendant.................................................................................................12

C.　Promote Respect for the Law, Protect the Public, Punishment and Deterrence ............12

D.　Restitution, Special Assessments & Fine..............................................................................13

CONCLUSION...................................................................................................................................13

# **TABLE OF AUTHORITIES**

### **Cases**

*Paroline v. United States*, 133 S. Ct. 2886 (2013) .................................................................... 13

*United States v. Cortes*, 299 F.3d 1030 (9th Cir. 2002) ....................................................... 10, 11

*United States v. Ramos-Medina*, 706 F.3d 932 (9th Cir. 2013) .................................................. 10

### **Statutes**

18 U.S.C. § 401(3) ........................................................................................................................ 3

18 U.S.C. § 2252(a)(4)(B) ............................................................................................................ 3

18 U.S.C. § 3013 ......................................................................................................................... 13

18 U.S.C. § 3014 ......................................................................................................................... 13

18 U.S.C. § 3553(a)(2)(A) .......................................................................................................... 13

### **Rules**

USSG §3C1.3 .............................................................................................................................. 10

## INTRODUCTION

The United States respectfully submits its sentencing memorandum concerning defendant Kenneth Breslin. Breslin, a clinical psychologist who treated adults, children, and adolescents, was originally charged with one count of possession of child pornography, when hundreds of thousands of child pornography files were found on computers and electronic devices in his home and in his psychology office. While on pretrial release, Breslin repeatedly and flagrantly violated his most important bond condition (not to use a computer or the internet) and again collected child pornography files, some of which depicted pre-pubescent children being subjected to sadistic conduct.

Considering the circumstances of Breslin's criminal conduct, the government respectfully requests that the Court sentence him to 151 months and one day in custody, with five years of supervised release, a special assessment of $10,300, and agreed-upon restitution of $4,000 per victim who submitted a claim in this case. This sentence represents the low end of the applicable Sentencing Guidelines range of imprisonment. In light of the parties' agreement as to restitution, the pre-payment of restitution, and the likelihood of civil lawsuits filed by the victims, the government does not recommend that the Court impose a fine.

## PROCEDURAL HISTORY

Originally, the Contra Costa County District Attorney charged Breslin with possession of child pornography. On December 15, 2016, a federal grand jury returned an Indictment, charging Breslin with one count of knowing possession of child pornography material. Dkt. #1. Following Breslin's arrest, Magistrate Corley held a detention/bond hearing on December 21, 2016. Dkt. #4. Magistrate Corley ordered Breslin released on a $150,000 bond, with Elizabeth Breslin, the defendant's sister, serving as his financially-qualified surety and custodian. *Id*. Magistrate Corley made it clear to Breslin and his custodian that the most important release condition was "he shall not have access to the Internet and shall not use or possess any computer or any other device which shall have access to the Internet." Dkt. #23 at 6. Magistrate Corley clarified, "if he's going to have a phone, it has to be the old-fashioned flip phone without any Internet access." *Id.* at 7.

Following the discovery that Breslin was using an unauthorized iPhone and had engaged in highly suspicious, although not demonstrably illegal, conduct, Magistrate Corley held a series of bond

1  violation hearings.  Dkt. #28, 32, 35.  Ultimately, Magistrate Corley ordered Breslin to reside at a
2  Residential Reentry Center (RRC), at his family's expense, only to leave for medical, counseling and
3  legal appointments.  Dkt. #37.  After about seven weeks, Magistrate Corley allowed Breslin to again
4  reside with his sister, on "lock down and subject to electronic monitoring."  Dkt. #39.  Magistrate Corley
5  set a briefing schedule for the government's anticipated bond forfeiture motion.  *Id*.

6  In lieu of pursuing bond forfeiture for the iPhone violation, the parties entered into a stipulation
7  to request that the Court allow Breslin to deposit $100,000 into the Court's registry, to be used to pay
8  any Court-ordered restitution, criminal monetary penalties, and special assessments in the case.  Dkt.
9  #40.  The Court signed the proposed order, instructing the Clerk of the Court to accept the $100,000
10 from Breslin, for crediting towards the defendant's restitution obligation, other criminal monetary
11 penalties, and special assessments, and pending the further order of this Court.  Dkt. #43.  On September
12 7, 2017, Breslin deposited the $100,000.  Dkt. #48.

13 In early September, United States Pretrial Services learned that Breslin was using a laptop
14 computer to access the internet.  PSR ¶ 8.  Magistrate Corley found that Breslin had committed the most
15 deliberate intentional violations of pretrial release conditions that she had ever seen, and remanded him
16 to custody.  Dkt. #55 at 7-8.

17 A federal grand jury returned a Superseding Indictment, charging Breslin with two counts of
18 knowingly possessing child pornography (in violation of 18 U.S.C. § 2252(a)(4)(B)) and one count of
19 contempt of court (in violation of 18 U.S.C. § 401(3)).  Dkt. #60.  On March 1, 2018, Breslin pleaded
20 guilty to the three counts in the Superseding Indictment, pursuant to a written Plea Agreement.  Dkt.
21 #67.  In the Plea Agreement, the parties dispute whether Breslin should be entitled to an adjustment for
22 acceptance of responsibility, and Breslin reserves his right to request a downward variance from the
23 Guidelines range of imprisonment.  *Id*. at 6.

## BACKGROUND

**A.   Factual Background**

1.   Initial Investigation Based Upon CyberTip

On August 15, 2016, Google learned that two apparent child pornography images were being
stored in an account maintained by Kenneth Breslin.  PSR ¶ 11.  As statutorily required, Google then

UNITED STATES' SENTENCING MEMO
CR 16-0515 YGR                                      2

sent the images to NCMEC, which generated a CyberTip. PSR ¶ 12. The first file showed a girl about 12, nude from the waist down, on her knees. The camera focuses on her vagina, and the hand of an adult male appears to be touching her right leg. *Id*. The second file showed a prepubescent girl wearing black stockings with her genital area exposed, and the camera was focused on the girl's genital area. PSR ¶ 13.

The local Internet Crimes Against Children (ICAC) task force obtained state search warrants for Brelin's home, in Lafayette, and psychology office (formerly operating as "A Child's Point of View") in Orinda. PSR ¶ 18. On October 5, 2016, the ICAC team seized a total of about 10 computers, smartphones, and digital storage devices from both locations, after an on-site preview revealed tens of thousands of child exploitation images. PSR ¶ 20. During an interview at Breslin's residence, when asked if law enforcement would find child pornography on his computer Breslin said, "I hope not." PSR ¶ 19. Breslin did not really deny downloading child pornography but said it was an accident. *Id*.

2.   Forensic Investigation

On October 4, 2016, a Contra Costa Superior Court judge authorized a search warrant for Breslin's Google account. On October 12, 2016, Google provided the data required by the warrant, for Breslin's account which was shut down by Google on August 15, 2016. In a folder called "DropBox" within Breslin's Google account, investigators found three images that appeared to be child pornography, including:

- An image of an approximately nine to 11 year old girl. She has clips attached to her nipples and the words, "ochan/9/" was written on her stomach. The girl was naked and her hands were in front of her genital area. PSR ¶ 22.

A subsequent federal search warrant issued to Dropbox resulted in the return of no information since Breslin's account had been deleted.

Homeland Security Investigations (HSI) agents obtained a federal search warrant for the devices the ICAC team seized from Breslin. In the laptop computer from Breslin's home, after a "taint agent" screened for files that would potentially qualify as privileged communications between a psychotherapist and a client, agents found tens of thousands of files that constituted child pornography and child erotica. PSR ¶ 36. These child pornography files were largely contained under the folder named "A Child's Point of View" (which was the old name of Breslin's psychology practice) within

"Client Documents." The contraband files were saved in hundreds of sub-folders within "A Child's Point of View," as shown in Exhibit 1, which is a printout of the file path structure of Breslin's laptop computer. These child pornography files included:

- A series of images that show an approximately 11-year-old girl naked with a mask on her face; her hands bound; close ups of her vagina and anus; lying in a bed with her hands tied above her head and calves and thighs tied together over her head; an object inserted in her vagina; an adult penis hovering above her vagina; and a close up of ejaculate trickling down her vagina.

- A gallery image (one image containing 13 photos) of a prepubescent female approximately 5 years of age being vaginally penetrated by an adult male.

- A gallery image (one image containing 13 photos) of a toddler being digitally penetrated.

- A naked prepubescent female, approximately 3 to 5 years of age on her elbows and knees on a bed being anally penetrated by an adult erect penis.

- A gallery style image (1 image with 12 photos). The images shows a prepubescent female, approximately 7-8 years of age, orally copulating an adult male, being digitally penetrated, and close ups of her bound with yellow rope.

In the laptop computer seized from Breslin's psychology office, agents found a large amount of child pornography and child exploitation material (PSR ¶ 24), such as images of:

- A child of indeterminate gender, but possibly male that has a milky white substance on the chin. An erect penis is over the child's face. The child appears to be crying.

- A prepubescent female, approximately 6-8 years of age grasping an erect penis being held close to her face.

- A prepubescent female, approximately 6-7 years of age, straddling an adult male being vaginally penetrated by the penis. The child appears to be grimacing in pain.

- A naked female toddler, approximately 8-10 months of age. An adult male is holding the child over his head as he lies on his back and is licking the vaginal area of the toddler.

In a 16 GB thumb drive seized from Breslin's residence, after breaking the encryption code, HSI agents found over 300 files (still images and videos) that constitute child pornography, such as:

- A video of a naked adolescent female, approximately 10 to 12 years of age orally copulating an adult male and an adolescent male, then being vaginally and anally penetrated by the adolescent male. [Note: the file path for this was under Client Documents]

- A video of a girl 7 to 8 years old who masturbates and orally copulates an adult male, and is later vaginally penetrated by the adult male.

- A close-up image of the vaginal area of a prepubescent child, 8 to 10 years old. An adult's hands are spreading the child's labia.

In a 512 MB thumb drive seized from Breslin's psychology office, agents found five copies of a short video of:

- An adult male vaginally penetrating a prepubescent female, approximately 9-11 years of age with his erect penis. The male is also seen stroking the child's undeveloped chest. PSR ¶ 29.

The remaining devices seized from Breslin did not contain child pornography, and agents returned the "cleared" items.

### 3. Bond Violations / Contempt of Court

On April 12, 2017, Pretrial Services seized an iPhone 6 from Breslin, after discovering that he was using it to access the internet, in violation of the Court's release order. At a hearing on April 24, 2017, Magistrate Corley characterized the violation as "a bold, intentional, direct violation." Dkt. #28 at 12. After the government summarized the concerning aspects of Breslin's internet activity on the phone based upon a preliminary forensic examination (Id. at 7-10), Magistrate Corley placed Breslin on lockdown and continued the hearing so the defense could respond.

At a bond violation hearing on May 4, 2017, Magistrate Corley stated: "what we have is a flagrant -- the most flagrant -- violation I've ever seen in terms of this condition in one of these cases. The most flagrant." Dkt. #32 at 12. Magistrate Corley also stated: "that is a dilemma of his own making, and what I'm stuck with is I have someone that conditions were imposed who's completely flagrantly, willfully, intentionally, knowingly violated them." *Id*. at 16-17. At that hearing, Magistrate Corley found that the government established by clear and convincing evidence that Mr. Breslin violated the bond condition that he not use a computer or the internet. *Id*. at 23.

In early September of 2017, Breslin was discovered using a laptop computer to access the internet. Magistrate Corley characterized Breslin's violations at a hearing:

> Now he has a laptop, and he was deliberately accessing the internet and other sites and those things, intentionally jeopardizing his family . . . but I find he is not only a danger to the community but a risk of flight, because he cannot be trusted for one second. He's repeatedly lied to Pretrial and the Court, and honestly to you [defense counsel], as well, and he just can't be trusted.
> . . .
> I mean, this the most, in my six years on the bench, deliberate -- I mean, the earlier one was, now he has number one and two -- the most deliberate intentional violations of pretrial that I've ever seen. And so I'm going to remand him to the custody of the U.S. Marshals.

Dkt. #55 at 7-8.

The government obtained a federal search warrant for the laptop computer taken from Breslin in September, and discovered that it was activated in mid-October of 2016 (after the ICAC team seized his other devices) and used continually (except for the seven weeks when he was at the RRC).  The forensic review showed that Breslin had been accessing child pornography files on the laptop computer, including:

- A photo depicting a young girl, approximately 11 years old and she is completely nude. The girl is being sodomized by an adult male.
- A photo depicting a naked girl approximately 10 years old engaging in oral sex with a dog.

PSR ¶ 38-39.

Breslin conducted Google searches from September 2017, including searches for U.S. District Court Judge Yvonne Martinez [sic] Rogers, searches for files in DepFile, a cloud file sharing service, and searches for how to clear browsing history.  PSR ¶ 40.  Investigators located a user assist file in which someone using the Windows account "Ken" executed to TOR (The Onion Router) application.  PSR ¶ 43.  TOR is a web browser designed to anonymize a user's internet traffic by masking their true IP address by routing the user's internet traffic through multiple servers throughout the world.  *Id*.  TOR is also used as a web browser designed to access the "dark web," which is portions of the internet not readily visible to normal internet users.  *Id*.  The last user assist for TOR on Breslin's computer was August 25, 2017.  Between August 30, 2017, and September 4, 2017, Breslin connected two separate SanDisk USB devices to the laptop. *Id*.  Breslin had accessed the following websites: www.incestangel3d.com; http://10yo.win/ with a website title of "both clits"; http://teen.ci.ru; http://free-teen.ru; and http://young-yeen-en.ru. A further search of the laptop revealed that Mr. Breslin used cloud storage accounts outside the United States, likely in an attempt to avoid the reporting requirements of U.S. based providers.  *Id*.

In the laptop computer, Breslin had drafted letters to friends, family and former clients of his psychology practice.  PSR ¶ 41; Exhibit 2.  Those letters emphasized that Breslin had "testified as an expert witness in hundreds of cases in Juvenile, Criminal and Family Superior Court" and "was the founder and director of A Child's Point of View in Lafayette from 1991 until 2001."  *Id.*  The letters completely mischaracterized the nature of the evidence against Breslin, claiming that the child pornography material came from a "patient" who put the material onto a thumb drive that Breslin

claimed he kept in a safe. *Id.* The letters also mischaracterized the investigation, claiming it focused on the patient's online behavior instead of Breslin's conduct. The letters concluded, "In fact, technically, I am not innocent." *Id.*

After the forensic search of the laptop computer revealed that Breslin had apparently been copying child pornography material onto an optical disc and had recently accessed USB storage devices, the government obtained a federal search warrant for Breslin's sister's residence, which was executed on October 4, 2017. PSR ¶ 44. The search team located no evidence of a crime at Breslin's sister's residence, but learned that Breslin's belongings had been moved to a storage unit due to his recent remand. The search team then obtained a warrant for the storage locker, but a thumb drive discovered there did not contain evidence of a crime. *Id.*

In a recorded call on September 20, 2017 between Breslin and his sister, Breslin addressed the discovery of his laptop computer (PSR ¶ 46):

> BRESLIN, K: And um, you know, then, you know, he'll let me know. I'm just kind of crossing my fingers and praying that there's not going to be any more charges. That would be disastrous.
> ...
>
> BRESLIN, K: 'cause anything on that computer is going to be after October 5th. You know, I bought that computer afterwards.
> . . .
>
> BRESLIN, K: I didn't use it for all those months, you know, I was not doing anything there, so, you know the fact that I would do something so stupid, um, I wasn't, ah, I wasn't, there wasn't really anything on the computer. It was on that little thumb drive.
>
> Breslin, E: Right. Which seems to have disappeared….
>
> BRESLIN, K: Yeah, but that, again…..um, if they didn't find it, well, then I'm not worried about it… a whole lot, but…we'll find out.

In a recorded call on October 7, 2017 between Breslin and his sister, Breslin addressed the discovery of the missing thumb drive (PSR ¶ 47):

> Breslin, E: Did you hear that we got searched? The FBI showed up with a search warrant.
>
> BRESLIN, K: Really?
>
> Breslin, E: But, they didn't…[] did find a thumb drive. So that was turned in last week to them. Homeland Security people [].
>
> BRESLIN, K: Wait, say that again.
>
> Breslin, E: The thumb drive that was attached to your computer?

UNITED STATES' SENTENCING MEMO
CR 16-0515 YGR                                       7

BRESLIN, K: Yeah.

Breslin, E: Was found.

BRESLIN, K: It was found?

Breslin, E: It had been missing….Yes, it was found. And Homeland Security now has it.

BRESLIN, K: Oh shit. I was hoping he would just throw that away.

Breslin, E: (LAUGHS) and be liable for it?

BRESLIN, K: Well, I mean, you know, if it's gone, it's gone.

Breslin, E: Why do you think they showed up with a search warrant?

BRESLIN, K: Well, I don't know. You know….

Breslin, E: Yeah, right. Anyway…well, they've got it.

BRESLIN, K: Well, I'm sorry to hear about that.

On October 13, 2017, investigators obtained a federal search warrant for the thumb drive that had been connected to Breslin's laptop computer when it was seized in early September—the one that Breslin was so disappointed to learn had been located, and wished had been thrown away. Investigators needed many attempts to break the encryption of the thumb drive. Eventually, the investigators deduced the encryption code and located about 400 images (in unallocated space clusters) that depict pre-pubescent minors engaged in lewd exhibition of their genitals. PSR ¶ 44-45.

4.   Conversations in 2018 Show a Lack of Acceptance of Responsibility

Breslin's conversations in jail in 2018 indicate that he minimizes his role in the offenses, blames other people for his predicament, and believes he was unfairly treated by the government. Exhibit 3, a report summarizing Breslin's relevant 2018 recorded conversations. These conversations stand in stark contrast to the written statements that Breslin submitted to the United States Probation Office. PSR ¶¶ 57, 58.

In video calls with John Lineweaver (who wrote a letter of support to this Court), Breslin characterized the bond violation as "a technicality" and said he was just paying bills. Exhibit 3 at 9-10. Addressing restitution claims by victims, Breslin said, "there are people in, in the restitution fund out there, that are victims, but, they're like, they're like corporations, little corporations, and they're making

claims on my available $100,000 dollars of course." *Id*. at 12. Breslin also said, "What does that mean? I still get 50 months? So, it's depressing. You know? It doesn't matter how I look at it, ah for something that, ah, I don't even feel I'm guilty of. I'm going to have to do several years." *Id*. at 20. Breslin also said, "That's, that's... for me it's a death sentence. I was, I was arguing, well then let's go to trial. Ah, and he said, you can't get anything out of a trial in your case. So I was like, well, I can embarrass the damn government for doing what they've done…." *Id*. at 22. Breslin also noted that "I have enough assets that I'm actually making money while I'm in here. You know my net worth is going up. It doesn't stay stagnant, so, I guess that's, that's good for my heirs." *Id*. at 23. Breslin said, "Yeah, well from my point of view, you know, it's a completely victim, victimless crime." *Id*. at 25. When warned that he should not express such sentiments in front of a judge, Breslin said, "I've already written out what I want to say, and it doesn't contain that kind of language at all." *Id*. at 26-27.

In a conversation with Stan Cossette (who also wrote a letter to this Court), Breslin said, "I'm actually blaming it [the second child pornography offense] on the medications, 'cause I had my doctor write that letter and ah, so, you know, we have a little bit of a stand on there, but at least, then my age, and...." Exhibit 3 at 18.

### B. The Sentencing Guidelines Calculations

As set forth in the plea agreement and the PSR (¶¶ 60-83), the adjusted offense level is 34, after a base offense level of 18 (U.S.S.G. §2G2.2(a)(1)), application of specific offense characteristics reflecting prepubescent minor victims (4-level, §2G2.2(b)(2)), sadistic conduct (4-level, § 2G2.2(b)(4)), use of a computer (2-level, §2G2.2(b)(6)), and over 600 images (5-level, 2G2.2(b)(7)(D)). Because Breslin was on pretrial release when he committed the second child pornography offense, three levels are added under USSG §3C1.3. As explained below, the government does not believe Breslin has clearly demonstrated acceptance of responsibility for his offenses. The total offense level is 34. The Government agrees with the Probation Department's criminal history computations. Breslin has no prior convictions, and no prior arrests, so his criminal history score is zero and his criminal history category is I. The suggested Guidelines sentencing range for Offense Level 34 and a Criminal History Category of I is 151 to 188 months of imprisonment. PSR ¶ 140.

"The defendant bears the burden of showing that he has accepted responsibility for his actions." *United States v. Ramos-Medina*, 706 F.3d 932, 940 (9th Cir. 2013) (citing *United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2002)).  Section 3E1.1 provides for a downward adjustment in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  The Application Notes suggest appropriate considerations, including: whether the defendant truthfully admitted the offense conduct and did not falsely deny any additional relevant conduct; voluntary termination of criminal conduct; voluntary payment of restitution prior to adjudication of guilt; voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; post-offense rehabilitative efforts; and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.  Note 1.  Note 3 states that entering a guilty plea before trial and truthfully admitting relevant conduct will constitute significant evidence of acceptance of responsibility, but notes that this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance, and notes that a defendant who pleads guilty is not entitled to an adjustment for acceptance of responsibility.  Note 4 provides that "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct" except in "extraordinary cases."

The government agrees with the United States Probation Office that Breslin has not established that he should receive an adjustment for acceptance of responsibility in this case.  Breslin did not voluntarily terminate his criminal conduct, instead he continued to engage in it for many months, in direct violation of the Court's orders.  Breslin did not voluntarily assist authorities in the recovery of the instrumentalities of his offense.  Instead, Breslin told his family members that he hoped they would dispose of incriminating evidence, did not consent to the search of the laptop seized from him in early September, and used encryption on his thumb drives and programs such as The Onion Router to obscure his criminal conduct.  Breslin has now been convicted of Contempt of Court, which is similar to obstruction of justice, an offense that the Sentencing Commission believes ordinarily indicates the defendant has not accepted responsbility.

Breslin was on pretrial release pending his guilty plea and sentencing for Possession of Child Pornography when he violated his release conditions by repeatedly engaging in the same criminal

conduct, resulting in a second charge of Possession of Child Pornography. After being remanded to custody for blatant bond violations and new criminal conduct, Breslin's jail telephone conversations [Exhibit 3] demonstrate that he has not really accepted responsibility for his actions. In the conversations, Breslin expressed: a strong desire to have his family member throw out incriminating evidence (the thumb drive) (PSR ¶ 47); his view that child pornography crimes are "completely . . . victimless" (PSR ¶ 49); the fact that his bond violation was "a technicality, and I….and we all kind of minimized it. It was like, come on. I was paying my bills. That's, that's not, not a terrible thing" (PSR ¶ 48); his plan to kind of minimize the second crime by blaming it on the medications because he had his doctor write a letter (PSR ¶ 49); asking his attorney to file a motion to take that $100,000 dollars back (Exhibit __ at 12); and calling the victims "they're like corporations, little corporations, and they're making claims on my available $100,000 dollars of course." (*Id.*)

Taken as a whole, Breslin's conduct and comments (when he believed nobody from the government was listening) indicate that he has not fully accepted responsibility for his actions, despite entering guilty pleas to the three charges in the Superseding Indictment.

## DISCUSSION

### A.    The Nature of the Offense

The victimization of the children portrayed in the images that Breslin collected on his multiple laptops and digital storage devices continues through the trading of images and videos of their degradation and torture years later through networks of people who take pleasure in watching the victimization of children. By seeking out and downloading child pornography through largely undetectable methods, Breslin has helped to maintain and expand a marketplace for such images. So long as such a marketplace exists, pedophiles' interests will be fed and reinforced and more children will be victimized in order to satisfy those interests.

In Breslin's child pornography collection, NCMEC identified <u>more than 100 series</u> of previously-encountered victims, including "Jenny," "Tara" and "Vicki." The government received more than 20 victim impact statements, which were provided to the Court (through Probation) and opposing counsel. Attached as Exhibit 4 (filed under seal) is a powerful videotaped victim impact statement (with a transcript) from the victim who prefers to be known as "Lily." Lily says, "Every day people are

trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they've seen every part of me. They are being entertained by my shame and pain." "So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares about it often. I can never feel safe so long as my images are out there. Every time they're downloaded I am exploited again, my privacy is breached and I feel in danger again. I fear that any of them may try to find me and do something to me."

### B. Characteristics of Defendant

This is Breslin's first arrest and conviction, beyond a misdemeanor draft-evasion conviction decades ago. As an expert in psychology who has testified hundreds of times in local courts, and someone who has treated both sex offenders and children and juveniles, Breslin should know the devastating effects of the crime of child pornography on victims. When ordered not to use a computer, smartphone, or the internet as a condition of his pretrial release, Breslin flagrantly, repeatedly, and willfully violated that condition in multiple ways, including using computers to again obtain child pornography. While Breslin's written statements to the Court (PSR ¶¶ 57, 58) claim acceptance of responsibility, his statements to family members and friends show a lack of responsibility and a lack of remorse.

### C. Promote Respect for the Law, Protect the Public, Punishment and Deterrence

The government respectfully submits that the recommended sentence of 151 months' imprisonment "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The recommended sentence would deter Breslin and others from creating or patronizing a market for material showing horrific victimization of the most vulnerable members of society, and from re-victimizing the innocent victims of these crimes. The victims portrayed in the photographs and images that Breslin received and possessed have expressed a desire to hold offenders such as him accountable for their continued fear and suffering. Finally, a lengthy sentence would convey the message that the defendants who repeatedly and flagrantly violate the Court's orders by committing new crimes will be held accountable for their actions.

### D. Restitution, Special Assessments & Fine

Following the first bond violation, Breslin agreed to deposit $100,000 into the Court's registry, to be used to satisfy any court-ordered restitution, special assessments and financial penalties. The parties jointly request that the Court order that Breslin pay $4,000 to each of the 21 victims who filed restitution claims in this case. Such an amount is, the government submits, an amount that approximates the harm Breslin caused to the victims by downloading files depicting their victimization in very substantial quantities. *See Paroline v. United States*, 133 S. Ct. 2886 (2013).

Because Breslin is guilty of two counts of child pornography possession that carry an additional $5,000 special assessment under the Justice for Victims of Trafficking Act (18 U.S.C. § 3014), plus the usual mandatory $100 special assessment per count (18 U.S.C. § 3013), the total amount of special assessments is $10,300. PSR ¶ 147.

The government does not recommend that the Court impose a fine, in light of the agreement to pay $4,000 in restitution to each victim (through money already deposited into the Court's registry), and the strong likelihood that the victims of this offense will file civil lawsuits, as already expressed to government counsel and Breslin's counsel.

### CONCLUSION

Based upon the reasons set forth above, the United States respectfully requests that the Court impose the sentence of 151 months and one day (consecutive) in custody, to be followed by five years of Supervised Release, with the conditions recommended by the United States Probation Officer, including registration as a sex offender under California law, restitution in the amount of $4,000 per victim who submitted a request, and a $10,300 special assessment.

DATED: May 10, 2018                               Respectfully submitted,

ALEX G. TSE
Actina United States Attorney

   /s/ *Christina McCall*

CHRISTINA McCALL
Assistant United States Attorney