PAGES 1 – 55

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. CR-16-0515 YGR |
| | ) | |
| VS. | ) | FRIDAY, MAY 25, 2018 |
| | ) | |
| KENNETH BRESLIN, | ) | OAKLAND, CALIFORNIA |
| | ) | |
| DEFENDANT. | ) | SENTENCING |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFF:**               ALEX G. TSE, ESQUIRE
                                ACTING UNITED STATES ATTORNEY
                                1301 CLAY STREET, SUITE 340S
                                OAKLAND, CALIFORNIA  94612
                        BY:  CHRISTINA M. MCCALL,
                                ASSISTANT UNITED STATES ATTORNEY

**FOR DEFENDANT:**               MARK S. GOLDROSEN, ESQUIRE
                                255 KANSAS STREET, SUITE 340
                                SAN FRANCISCO, CALIFORNIA 94103

**ALSO PRESENT:**                KAREN L. MAR, U.S. PROBATION OFFICE

**REPORTED BY:**                 DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                                OFFICIAL COURT REPORTER

            TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| 1 | <u>FRIDAY, MAY 25, 2018</u>                                      <u>2:16 P.M.</u> |

1    <u>FRIDAY, MAY 25, 2018</u>                          <u>2:16 P.M.</u>

2                    P R O C E E D I N G S

3         **THE CLERK:**  WE WILL DO THE KENNETH BRESLIN MATTER.

4    CALLING CRIMINAL ACTION 16-515 UNITED STATES VERSUS

5    KENNETH BRESLIN.

6    COUNSEL, PLEASE STATE YOUR APPEARANCES.

7         **MS. MCCALL:**  GOOD AFTERNOON, YOUR HONOR.  CHRISTINA

8    MCCALL FOR THE UNITED STATES.

9         **MR. GOLDROSEN:**  GOOD AFTERNOON, YOUR HONOR.  MARK

10   GOLDROSEN FOR KENNETH BRESLIN.  HE IS PRESENT IN CUSTODY.

11        **PROBATION OFFICER:**  GOOD AFTERNOON, YOUR HONOR.

12   KAREN MAR WITH PROBATION.

13        **THE COURT:**  OKAY.  GOOD AFTERNOON EVERYONE.

14   MR. BRESLIN, WE ARE HERE TODAY ON OUR SCHEDULE FOR YOUR

15   SENTENCING.  I CONTINUED THIS BY A WEEK BECAUSE THERE WAS SO

16   MUCH MATERIAL THAT CAME IN THAT I NEEDED ADDITIONAL TIME TO

17   REVIEW IT AND CONSIDER IT.  LET'S GO THROUGH THAT FIRST.

18        IN PREPARATION FOR THESE PROCEEDINGS, I'VE DONE THE

19   FOLLOWING:  I'VE REVIEWED THE PRESENTENCE INVESTIGATION REPORT

20   WHICH WAS PREPARED ON APRIL 24TH, 2018, DISCLOSED TO THE

21   PARTIES ON MAY 7TH.  THAT REPORT INCLUDED AN OBJECTION BY THE

22   DEFENDANT WHICH I WILL RESOLVE TODAY.  IT ALSO INCLUDED A

23   RECOMMENDATION.

24        IN ADDITION, I REVIEWED AND CONSIDERED THE DEFENSE

25   SENTENCING MEMORANDUM, WHICH INCLUDED NUMEROUS LETTERS FROM

1   FAMILY AND FRIENDS, THE PSYCHOLOGICAL REPORTS THAT WERE

2   SUBMITTED, THE UNITED STATE'S SENTENCING MEMORANDUM AND ALL OF

3   ITS ATTACHMENTS, INCLUDING A VIDEO WHICH WAS SUBMITTED UNDER

4   SEAL.

5        WITH RESPECT TO THOSE DOCUMENTS, HAVE YOU HAD AN

6   OPPORTUNITY YOURSELF TO REVIEW AND CONSIDER THOSE,

7   MR. BRESLIN?

8            **THE DEFENDANT:**  YES, I HAVE.

9            **THE COURT:**  DO YOU NEED ANY MORE TIME TO REVIEW THOSE

10  DOCUMENTS?

11           **THE DEFENDANT:**  NO, I DON'T.

12           **THE COURT:**  ARE YOU PREPARED TO PROCEED?

13           **THE DEFENDANT:**  YES, MA'AM.

14           **MR. GOLDROSEN:**  YOUR HONOR, I'M SORRY.  I HAVE ONE

15  ADDITIONAL LETTER, IF I CAN GIVE THAT TO THE COURT.  IT'S A

16  SHORT LETTER THAT CAME IN LATE.

17           **THE COURT:**  YOU CAN PASS THAT UP.

18           **MR. GOLDROSEN:**  THANK YOU.

19                (DOCUMENT HANDED TO COURT.)

20           **THE COURT:**  IN ADDITION, I WILL NOTE THAT I WAS

21  PROVIDED WITH ALMOST ONE FOOT OF DOCUMENTS FROM VICTIMS,

22  INCLUDING VICTIM STATEMENTS, MEDICAL REPORTS, AND CLAIMS FOR

23  RESTITUTION, ALL OF WHICH I HAVE CONSIDERED AS WELL.

24                (PAUSE IN THE PROCEEDINGS.)

25       AND I HAVE NOW READ THIS LETTER THAT COUNSEL HAS JUST

```
 1    HANDED UP.
 2        DID YOU HAVE A COPY FOR THE U.S. ATTORNEY?
 3            MR. GOLDROSEN:  I'VE ALREADY GIVEN IT TO THEM, YES.
 4            THE COURT:  ALL RIGHT.  IS THERE ANY REASON WHY WE
 5    SHOULD NOT NOW PROCEED, MR. GOLDROSEN?
 6            MR. GOLDROSEN:  NO.
 7            THE COURT:  LET'S BEGIN WITH THE GUIDELINE
 8    CALCULATIONS.
 9        AS I TOLD YOU, MR. BRESLIN, THIS IS ALWAYS THE FIRST PLACE
10    THAT THE COURT MUST START AS PART OF THE ANALYSIS IN TERMS OF
11    WHAT IS AN APPROPRIATE STARTING PLACE FOR A SENTENCE IN A CASE
12    SUCH AS THIS.
13        THERE SEEMS TO BE ONE DISAGREEMENT WITH RESPECT TO THE
14    CALCULATIONS, AND I WILL TAKE ARGUMENT ON THAT, BUT THE
15    PORTION THAT THERE IS NOT A DISAGREEMENT ON APPEARS TO BE THE
16    FOLLOWING:  WITH RESPECT TO COUNTS ONE AND TWO, WHICH ARE
17    POSSESSION OF CHILD PORNOGRAPHY, UNDER THE SENTENCING
18    GUIDELINES SECTION 2G2.2, SUBSECTION A, SUBSECTION 1, WE BEGIN
19    WITH A BASE OFFENSE LEVEL OF 18.
20        UNDER THE GUIDELINES, BECAUSE THE MATERIAL INVOLVES MINORS
21    WHO HAVE NOT ATTAINED THE AGE OF 12 YEARS, THAT IS, IS
22    MATERIAL RELATED TO TODDLERS TO THOSE APPROXIMATELY 12 YEARS
23    OF AGE, THERE ARE TWO POINTS ADDED.
24        BECAUSE THE MATERIAL INVOLVES SADISTIC AND MASOCHISTIC
25    CONDUCT, THAT'S AN ADDITIONAL FOUR LEVELS.
```

1        BECAUSE THE COMPUTER WAS USED, THAT'S AN ADDITIONAL TWO

2   LEVELS.

3        AND THERE IS AN ADDITIONAL FIVE LEVELS BECAUSE THE OFFENSE

4   INCLUDED OVER 600 OR MORE IMAGES.

5        I WILL NOTE THAT UNDER SUBSECTION (B)(7)(D), THAT IS THE

6   CAP.  YOU CANNOT GO HIGHER THAN FIVE LEVELS.  AND HERE WE ARE

7   DEALING WITH HUNDREDS OF THOUSANDS OF IMAGES AND VIDEOS, SO WE

8   ARE WELL ABOVE THE CAP WHICH RELATES TO 600.

9        EVERYBODY AGREEABLE SO FAR?

10            **MS. MCCALL:**  YES, YOUR HONOR.

11            **MR. GOLDROSEN:**  YES.

12            **THE COURT:**  AND THE COURT CONCURS WITH RESPECT TO

13   THOSE PARTICULAR GUIDELINES CALCULATIONS.  ALL RIGHT.

14        THE OBJECTION RELATES TO THE ADDITION OF THE ADJUSTMENT

15   FOR OBSTRUCTION OF JUSTICE.  WITH RESPECT TO THIS, THE

16   GOVERNMENT IS SUGGESTING THAT THERE SHOULD BE AN INCREASE OF

17   THREE LEVELS BECAUSE MR. BRESLIN, WHILE HE WAS ON PRETRIAL

18   RELEASE, DID SECURE ADDITIONAL CHILD PORNOGRAPHY ON A

19   DIFFERENT DEVICE, AND THE DEFENSE'S PERSPECTIVE IS THAT THAT

20   SHOULD NOT BE INCLUDED.

21        NO, I TAKE THAT BACK.  YOU AGREE WITH THE THREE THERE.

22            **MR. GOLDROSEN:**  THAT'S CORRECT, YOUR HONOR.  I THINK

23   THE THREE, AND THERE'S A LITTLE BIT OF CONFUSION BECAUSE IN

24   THE -- AS I REREAD THE PRESENTENCE REPORT, IN PARAGRAPH 69

25   IT'S LISTED AS ADJUSTMENT FOR OBSTRUCTION OF JUSTICE, BUT IN

1    FACT 3C1.3 IS AN ADJUSTMENT FOR COMMITTING A CRIME WHILE OUT

2    ON PRETRIAL RELEASE.

3        WE DO NOT OBJECT TO THAT BECAUSE THAT IS CORRECT.  OUR

4    CONCERN IS THAT HE SHOULD BE ENTITLED TO ACCEPTANCE OF

5    RESPONSIBILITY DESPITE THAT ENHANCEMENT.

6            **THE COURT:**  THAT'S RIGHT.  SO I APOLOGIZE FOR THAT.

7    EXCUSE ME.

8        SO THERE ISN'T AN OBJECTION TO THAT THREE LEVEL, AND THE

9    GOVERNMENT CONCURS, AS DOES THE COURT.  CORRECT, MS. MCCALL?

10           **MS. MCCALL:**  THAT'S RIGHT, YOUR HONOR.

11           **THE COURT:**  SO WHAT WE ARE DEALING WITH THEN, BEFORE

12   I GET TO COUNT THREE, IS THE THREE-LEVEL DECREASE FOR

13   ACCEPTANCE OF RESPONSIBILITY.

14       NOW, WITH RESPECT TO THAT PARTICULAR DECREASE, THAT COMES

15   IN TWO PARTS.  THAT IS, UNDER THE SENTENCING GUIDELINES, THERE

16   IS A SINGLE -- THERE'S A ONE AND A TWO.  AND WHAT I COULDN'T

17   TELL FROM YOUR MEMO GIVEN THAT THE SECTION, IN PART, REQUIRES

18   A MOTION OF THE GOVERNMENT, HOW IT IS, EVEN UNDER YOUR THEORY,

19   I COULD ADJUST DOWNWARD BY THE ENTIRE THREE.

20           **MR. GOLDROSEN:**  I THINK YOU'RE CORRECT.

21       I THINK THAT YOU CAN ONLY ADJUST DOWNWARD BY TWO IN THE

22   ABSENCE OF A MOTION FROM THE GOVERNMENT.  I WAS NOT SPECIFIC

23   IN MY MEMO.  MAYBE I WAS HOPING THAT MAYBE AFTER THE

24   GOVERNMENT READ THE MEMO THEY MIGHT AGREE TO MAKE THAT MOTION,

25   BUT I DO AGREE WITH THE COURT, IT'S ONLY TWO THAT IS AT ISSUE

```
1    UNLESS THE GOVERNMENT CHANGES ITS MIND.

2              THE COURT:  OKAY.

3         SO WITH RESPECT TO SENTENCING GUIDELINE SECTION 3E1.1(B),

4    THE GOVERNMENT DOES NOT MAKE A MOTION FOR THE LEVEL ONE

5    DECREASE, AND SO THAT WILL NOT BE APPLIED.

6         SO THE QUESTION IS, UNDER 3E1.1(A) WHETHER THERE SHOULD BE

7    A TWO-LEVEL DECREASE.

8         NOW HERE'S WHAT I SEE THE ISSUE IS.  CLEARLY THERE IS

9    EVIDENCE IN THE RECORD THAT MR. BRESLIN HAS NOT ACCEPTED

10   RESPONSIBILITY FOR THESE CRIMES.  AND I CAN GO THROUGH THOSE

11   AND OUTLINE THEM, BUT I SUSPECT YOU KNOW WHAT EVIDENCE I'M

12   TALKING ABOUT.

13        THERE IS ALSO EVIDENCE IN THE RECORD THAT HE DID NOT MAKE

14   THE GOVERNMENT GO TO TRIAL.  HE DID NOT -- AND HE HAS

15   VOLUNTARILY PUT A HUNDRED THOUSAND DOLLARS INTO AN ACCOUNT FOR

16   PAYMENT TO THE VICTIMS.

17        NOW, THE GUIDELINES DO NOT ALLOW ME TO GIVE HIM ONE POINT;

18   THAT IS, IT'S EITHER TWO OR NOTHING.  I CAN DEAL WITH THIS IN

19   THE CONTEXT OF A VARIANCE, BUT THERE IS EVIDENCE ON BOTH

20   SIDES.

21        COMMENTS, MS. MCCALL.

22             MS. MCCALL:  YOUR HONOR, THERE IS EVIDENCE ON BOTH

23   SIDES, AS THE COURT HAS SUMMARIZED.  WE FOCUSED, OF COURSE, ON

24   THE FACT THAT IT'S THE DEFENDANT'S BURDEN TO SHOW HE HAS

25   ACCEPTED RESPONSIBILITY, AND MANY OF HIS COMMENTS AFTER BEING
```

1    REMANDED TO CUSTODY FOR A BOND VIOLATION WHILE WE WERE

2    FIGURING OUT THE ADDITIONAL CRIME THAT HE HAD COMMITTED,

3    INDICATE THAT HE ACTUALLY DID NOT ACCEPT RESPONSIBILITY.

4        HE DID ENTER A GUILTY PLEA TO ALL THREE CHARGES AGAINST

5    HIM, BUT HIS STATEMENTS SUCH AS, "FROM MY POINT OF VIEW, IT'S

6    A COMPLETELY VICTIMLESS CRIME".  HIS LETTERS THAT HE WAS

7    MAILING OUT TO FORMER CLIENTS GROSSLY MISCHARACTERIZING THE

8    EVIDENCE AGAINST HIM, AND IN CLAIMING HE WAS BASICALLY HELPING

9    A CLIENT AND IS JUST TECHNICALLY GUILTY OF THIS OFFENSE, AND

10   THEN HIS REPEATED EXPRESSED INTENT THAT HIS FAMILY MEMBERS

11   LOSE, CONVENIENTLY, EVIDENCE AGAINST HIM IN THE FORM OF A

12   THUMB DRIVE, IN HIS HIDING OF A LAPTOP COMPUTER THAT HE WASN'T

13   ALLOWED TO USE, WITH ALL THE BOND VIOLATIONS THAT WE DEALT

14   WITH, IT'S THE GOVERNMENT'S POSITION THAT HE HASN'T MET HIS

15   BURDEN OF SHOWING ACCEPTANCE.

16       **MR. GOLDROSEN:**  YOUR HONOR, I START FROM COMMENT...

17   THE COMMENTARY FOR 3E1.1, APPLICATION NOTE 3.  AND I THINK

18   THIS SETS FORTH THE -- A GUIDE FOR THE COURT'S ANALYSIS.

19       THERE IT TELLS US THAT ENTRY OF A GUILTY PLEA PRIOR TO THE

20   COMMENCEMENT OF TRIAL COMBINED WITH TRUTHFULLY ADMITTING THE

21   CONDUCT COMPRISING THE OFFENSE OF CONVICTION WILL CONSTITUTE

22   SIGNIFICANT, AND THAT'S THE WORD USED IN THE COMMENTARY,

23   SIGNIFICANT EVIDENCE OF ACCEPTANCE OF RESPONSIBILITY.

24       AND I THINK MR. BRESLIN HAS DONE THAT.  HE DID ENTER A

25   PLEA OF GUILTY.  HE DID ADMIT TRUTHFULLY IN COURT AT THE TIME

1    OF HIS CHANGE OF PLEA TO HAVING COMMITTED THESE OFFENSES.  HE

2    HAS NOT, NEITHER IN HIS PROBATION INTERVIEW NOR IN COURT, EVER

3    DENIED THE TRUTH OF THE CHARGES AGAINST HIM.  THIS CONSTITUTES

4    SIGNIFICANT EVIDENCE THAT MAY BE OUTWEIGHED BY CONDUCT OF THE

5    DEFENDANT THAT IS INCONSISTENT.

6        SO THE QUESTION IN MY MIND THE COURT HAS TO ADDRESS IS,

7    GIVEN THE SIGNIFICANT EVIDENCE, IS IT OUTWEIGHED BY HIS

8    CONDUCT.

9        NOW, THE LETTER THAT THE GOVERNMENT REFERS TO IS A LETTER

10   THAT WAS WRITTEN -- THE DATE ON THAT IS SEPTEMBER OF 2016.  I

11   DON'T REMEMBER THE EXACT DATE IN SEPTEMBER, AND THE GOVERNMENT

12   CAN CORRECT ME IF I'M WRONG, BUT MY RECOLLECTION IS THAT

13   THAT'S A SEPTEMBER DATE.  THAT'S BEFORE THERE WERE FEDERAL

14   CHARGES IN THIS CASE.  THAT WAS A TIME THERE WERE STATE COURT

15   CHARGES.  SO THAT IS NOT A LETTER THAT IS WRITTEN LONG IN THE

16   PROCESS, NOT A LETTER WRITTEN SUBSEQUENT TO HIS HAVING PLEAD

17   GUILTY AND ADMITTED THE TRUTH OF THE CONDUCT.

18       WHAT YOU HAVE, AND I THINK THE COURT MENTIONED HIS POSTING

19   OF A HUNDRED THOUSAND DOLLARS IN THE RESTITUTION FUND, HE ALSO

20   WAS ATTENDING SEX OFFENDER TREATMENT CLASSES DURING THE TIME

21   THAT HE WAS OUT OF CUSTODY.

22       I'M NOT GOING TO TRY TO MINIMIZE THAT MR. BRESLIN

23   REOFFENDED, BUT HE HAD A SERIOUS PROBLEM.  AND I THINK HE WAS

24   MAKING AN EFFORT AND HE JUST... HE COULDN'T DEAL WITH IT.  HE

25   COULD NOT KEEP HIMSELF FROM LOOKING AGAIN.

1          BUT THAT, IN MY MIND, DOESN'T MEAN HE HASN'T TRUTHFULLY

2     ADMITTED OR WAS SORRY FOR HIS CONDUCT.

3          **THE COURT:**  I ACTUALLY SEE NO EVIDENCE THAT HE'S

4     SORRY.  I SEE NO EVIDENCE THAT HE ACTUALLY HAS ADMITTED WHAT

5     HE HAS DONE.  HE HAS ADMITTED THAT THERE IS PORNOGRAPHY ON HIS

6     COMPUTERS.  THAT IS WHAT HE HAS ADMITTED.

7          WHAT HE HAS SAID TO PEOPLE IS THAT IT WAS THERE BECAUSE IT

8     BELONGED TO A CLIENT.  HE HAS NEVER SAID THAT HE, HIMSELF,

9     DOWNLOADED IT NOT ONCE BUT MULTIPLE TIMES.  THERE IS NO

10    EVIDENCE OF THAT.  THERE IS NO EVIDENCE OF REMORSE.

11         THERE IS EVIDENCE OF CREATING A FUND.  IT HELPS HIS CASE

12    FOR THE COURT TO SEE HIM CREATE A FUND TO HELP THE VICTIMS.

13    BUT HE DOESN'T EVEN ADMIT THAT THIS IS A VICTIMLESS -- HE

14    CLAIMS THIS IS A VICTIMLESS CRIME.  SO I TAKE ISSUE THERE IS

15    EVIDENCE OF THAT.

16         NOW, WE DON'T HAVE TO GO TO TRIAL.  IT'S A GOOD THING

17    BECAUSE NO ONE WOULD EVER WANT TO SEE WHAT'S IN THESE FILES.

18         BUT WHAT EVIDENCE AFFIRMATIVELY IS THERE OTHER THAN WHAT

19    I'VE JUST OUTLINED?

20         **MR. GOLDROSEN:**  WELL, I THINK THAT HIS STATEMENTS TO

21    THE PROBATION OFFICE AND HIS ACCEPTANCE WHEN WE WERE IN COURT.

22         **THE COURT:**  HOW IS IT, THOUGH, MR. GOLDROSEN, THAT I

23    CAN ACCEPT THAT AS ANYTHING OTHER THAN A CALCULATED ADMISSION

24    FOR THE COURT GIVEN THE CONVERSATIONS THAT HE WAS HAVING ON

25    THE TELEPHONE WHEN HE WASN'T IN FRONT OF A JUDGE SEEM TO BE A

1    MUCH MORE ACCURATE INDICATION OF WHAT IT IS SOMEONE IS

2    THINKING.

3         **MR. GOLDROSEN:**  WELL, I THINK YOU HAVE TO PUT THAT IN

4    CONTEXT OF WHO HE'S SPEAKING WITH, HE'S SPEAKING WITH HIS

5    SISTER, HE'S SPEAKING WITH CLOSE FRIENDS.

6       AND I THINK YOU MAY SAY THAT MAY BE ONE POINT OF VIEW THAT

7    WOULD BE A TIME WHERE HE MIGHT BE MORE CANDID, BUT IT ALSO IS

8    A TIME WHEN SOMEBODY WHO HAS BEEN A PRODUCTIVE PERSON FOR 50

9    YEARS OF HIS ADULT LIFE WHO IS STRUGGLING MIGHTILY WITH THE

10   SHAME AND EMBARRASSMENT OF WHAT HE HAS DONE, AND TRYING TO

11   RECONCILE THAT IN HIS OWN MIND --

12        **THE COURT:**  PERHAPS.

13        **MR. GOLDROSEN:**  -- ALSO WAS TRYING TO RECONCILE IT

14   AND THERE IS GOING TO BE A TENDENCY TO MINIMIZE.

15        **THE COURT:**  PERHAPS, BUT HE'S NOT ACCEPTED IT THEN.

16   IT'S ONE THING TO TELL IT TO YOU TO, HIS LAWYER, AND IT'S

17   ANOTHER THING TO SAY IT IN COURT SO THAT I DON'T SEND HIM AWAY

18   FOR THE REST OF HIS LIFE.  IT'S ANOTHER THING TO TRULY ACCEPT

19   IT, AND I HAVE NO EVIDENCE OF THAT.

20      BUT CONTINUE.  BECAUSE THE COMMENTARY I FIND TO BE

21   INTERESTING.  THERE ARE MULTIPLE SECTIONS, SUBSECTIONS A

22   THROUGH G, AND AS I WENT THROUGH THEM IN TRYING TO ANALYZE

23   YOUR ARGUMENT, VERY FEW OF THESE SECTIONS APPLY TO YOUR

24   CLIENT.

25      SO, FOR INSTANCE, APPLICATION NOTE 1(B) SAYS, "VOLUNTARY

1    TERMINATION OR WITHDRAWAL FROM CRIMINAL CONDUCT OR

2    ASSOCIATIONS".  WELL, THAT DOESN'T APPLY BECAUSE HE TURNED

3    AROUND AND DID THE EXACT SAME THING AGAIN.  SO THAT WOULD

4    WEIGH NOT IN FAVOR OF SHOWING ACCEPTANCE.

5         "VOLUNTARY PAYMENT OF RESTITUTION".  THAT DOES APPLY.

6         "VOLUNTARY SURRENDER TO THE AUTHORITIES PROMPTLY AFTER

7    COMMISSION OF THE OFFENSE".  THAT DOESN'T APPLY.  HE HID THE

8    COMPUTER.  HE HID EVERYTHING.

9         AND THEN "VOLUNTARY ASSISTANCE TO THE AUTHORITIES IN THE

10   RECOVERY OF THE FRUITS AND INSTRUMENTALITIES OF THE OFFENSE"

11   DOESN'T APPLY.

12        "VOLUNTARY RESIGNATION FROM THE OFFICE OR POSITION".

13   THAT'S IRRELEVANT HERE.

14        "POST OFFENSE REHABILITATION EFFORTS".  AGAIN, HE

15   REOFFENDED.

16        DEFENSE LAWYERS, BY THE WAY, ALWAYS COME IN HERE AND SAY

17   TO ME, ALWAYS, JUDGE, LOOK AT WHAT HE HAS DONE SINCE THE

18   ORIGINAL INDICTMENT.  SEE, HE'S DONE EVERYTHING GREAT.  HE'S

19   REALLY GOING TO REHABILITATE.  THIS IS THE EXACT OPPOSITE.

20           **MR. GOLDROSEN:**  WELL, THE COURT DIDN'T MENTION A,

21   WHICH I THINK, DESPITE THE COURT'S VIEW OF THE SITUATION, A IS

22   TRUTHFULLY ADMITTING THE CONDUCT, WHICH HE DID DO.  AND THE

23   COMMENTARY SAYS THAT THIS IS, BY ITSELF, SIGNIFICANT EVIDENCE.

24   SO THIS --

25           **THE COURT:**  WELL, IT'S A CONSIDERATION.

1          **MR. GOLDROSEN:**  I UNDERSTAND THAT.

2      BUT IF THAT, BY ITSELF, IS SIGNIFICANT EVIDENCE, THAT

3  MEANS THERE NEEDS TO BE A LOT OF EVIDENCE TO THE CONTRARY TO

4  OVERCOME THAT.  AND ALTHOUGH --

5          **THE COURT:**  BUT WHOSE BURDEN IS IT?  AND ISN'T

6  THERE -- I MEAN, IN ORDER FOR ME TO BUY YOUR ARGUMENT, I WOULD

7  HAVE TO IGNORE EVERYTHING ELSE THAT HE DID.

8          **MR. GOLDROSEN:**  WELL, I DON'T THINK YOU HAVE TO

9  IGNORE IT, I THINK YOU JUST HAVE TO MAKE A DETERMINATION AS TO

10 WHETHER THAT OUTWEIGHS THE SIGNIFICANT EVIDENCE FROM THE

11 TRUTHFUL ADMISSION.  AND SO THERE MUST BE SUBSTANTIAL

12 EVIDENCE, OR MORE THAN SIGNIFICANT EVIDENCE CONTRARY TO THAT

13 POSITION FOR YOU TO DECLINE THE TWO POINTS.

14      NOW, POST-OFFENSE REHABILITATIVE EFFORTS, HE TRIED.  HE

15 WENT DURING THE TIME THAT HE WAS OUT, HE WAS GOING EVERY WEEK

16 TO SEX OFFENDER THERAPY.  SO HE DID DO THAT.  IT WASN'T

17 SUCCESSFUL, I TELL -- I AGREE, BUT IT WASN'T BECAUSE HE WASN'T

18 TRYING.

19          **THE COURT:**  WELL, I DON'T KNOW THAT.

20      ANYTHING ELSE?

21          **MS. MCCALL:**  SUBMITTED, YOUR HONOR.

22          **MR. GOLDROSEN:**  SUBMITTED.

23          **THE COURT:**  WITH RESPECT TO COUNT THREE, THAT'S FOR

24 CRIMINAL CONTEMPT, AND EVERYONE AGREES THAT THAT SHOULD BE A

25 14.  CORRECT?

1          **MS. MCCALL:**  YES, YOUR HONOR.

2          **MR. GOLDROSEN:**  YES.

3          **THE COURT:**  SO WHEN LOOKING AT THE TWO GROUPS, THE

4    FIRST GROUP WILL CONTROL.

5          I DON'T THINK THAT THERE IS A CLEAR-CUT ANSWER,

6    MR. GOLDROSEN, ON WHETHER OR NOT TO APPLY THE TWO-LEVEL

7    ACCEPTANCE.  SO FOR PURPOSES OF THE CALCULATION, I THINK THE

8    WEIGHT OF THE EVIDENCE IS AGAINST YOUR CLIENT ON THIS

9    PARTICULAR TOPIC, AND I AM NOT GOING TO APPLY THEM.

10         I AM, THOUGH, BECAUSE THIS IS JUST A STARTING POINT, I AM

11   GOING TO TAKE THOSE FACTS INTO CONSIDERATION IN TERMS OF

12   ADJUSTING THE VIEW OF WHAT AN APPROPRIATE SENTENCE WOULD BE.

13         SO, FOR PURPOSES OF THE RECORD, I WILL APPLY A 34,

14   CRIMINAL HISTORY CATEGORY I, WHICH MEANS THAT WE ARE IN A

15   RANGE OF 151 TO 188 MONTHS.

16         I DO INTEND TO VARY DOWNWARD, IN PART, FOR THE ARGUMENTS

17   THAT YOU MADE IN TERMS OF ACCEPTANCE AND SOME OTHER REASONS,

18   WHICH I WILL GET TO AFTER WE HEAR -- AFTER I HEAR ARGUMENT.

19         BUT AS I SAID, THE CODE DOES NOT ALLOW ME TO SPLIT THE

20   TWO.  I WOULD PERHAPS GIVE HIM ONE GIVEN THE OVERWHELMING

21   EVIDENCE ON THE OTHER SIDE, BUT THAT'S NOT ALLOWED.  SO THAT'S

22   WHERE WE ARE.

23         OKAY.  I WILL HEAR ARGUMENT.  LET ME SAY A FEW THINGS SO

24   THAT YOUR ARGUMENT ON BOTH SIDES IS AS MEANINGFUL AS IT CAN

25   BE.

```
1          FIRST OF ALL, FOR THE U.S. ATTORNEY'S OFFICE, IT IS WELL

2    DOCUMENTED, AND I THINK MR. GOLDROSEN DID A GOOD JOB IN HIS

3    BRIEFS, INDICATING THAT THE SENTENCING GUIDELINES IN CHILD

4    PORNOGRAPHY CASES TEND TO BE OVERSTATED.  IT IS WELL

5    DOCUMENTED IN THIS DISTRICT AND ACROSS THE COUNTRY.

6          AND SO YOU SHOULD ADDRESS THAT BECAUSE YOU ARE ASKING FOR

7    A GUIDELINE SENTENCE.  AND I SUSPECT, MS. MCCALL, I WILL NOT

8    GIVE A GUIDELINE SENTENCE IN THIS CASE.

9          FOR THE DEFENDANT, MR. GOLDROSEN, AND I SHOULD SAY

10   MR. BRESLIN, PROBATION WAS NEVER AN OPTION FOR YOU.  NEVER.

11   EVEN BEFORE THE SUPERSEDING INDICTMENT, IT WAS NEVER AN

12   OPTION.  SO TO THE EXTENT YOU HAD A HOPE OR A PRAYER THAT THAT

13   WAS, IT WASN'T.

14         I FIND THIS CASE, ASIDE FROM THE FACT THAT CHILD

15   PORNOGRAPHY CASES ARE ALWAYS HORRIBLE CASES, THAT THE

16   POST-CONVICTION CONDUCT BY MR. BRESLIN WAS SOME OF THE WORST

17   WE HAVE EVER SEEN.  THERE IS AN INCREDIBLE LACK OF ACCEPTANCE

18   AND LACK OF REMORSE.  RECIDIVISM IN THIS CASE IS LIKELY, AND

19   WE KNOW THAT BECAUSE HE HAS ALREADY PROVEN IT.  HE APPARENTLY

20   BELIEVES, AS I INDICATED, THAT THIS IS A VICTIMLESS CRIME,

21   WHICH IS A TRAVESTY.

22         THE PSYCHOLOGICAL INFORMATION THAT WAS GIVEN TO ME WAS ALL

23   INTERESTING, EXCEPT IT DIDN'T ADDRESS THE FACT THAT HE

24   PROCEEDED TO VIOLATE AGAIN.  SO IT IS LESS HELPFUL THAN IT MAY

25   HAVE BEEN IN THE FIRST INSTANCE.
```

1        AND DESPITE WHAT PEOPLE MAY THINK, MR. BRESLIN IS A

2    TEMPLATE OFFENDER; OLDER WHITE MALE.  THAT'S WHO WE CONVICT.

3    THAT IS, THE GOVERNMENT.  THAT IS WHO COMMITS THESE HORRENDOUS

4    CRIMES.  THAT IS THE PROFILE -- WITH NO CRIMINAL HISTORY.

5    THAT IS THE PROFILE OF THE PEOPLE WHO ARE COMMITTING THESE

6    CRIMES.  SO, YOU CAN REFLECT ON THAT MR. GOLDROSEN.

7        WE WILL BEGIN WITH THE GOVERNMENT.  MS. MCCALL, YOU MAY

8    PROCEED.

9            **MS. MCCALL:**  YOUR HONOR, I'LL TRY TO BE BRIEF.

10       FIRST, WE DO NOT DISPUTE THAT THERE IS SOME MITIGATING

11   INFORMATION IN THIS CASE, NAMELY, THE FACT THAT MR. BRESLIN

12   REACHED THE AGE OF 69 WITH ALMOST NO CRIMINAL HISTORY, AND

13   THAT HE DID SERVE THE COMMUNITY IN THE ROLE OF A PSYCHOLOGIST

14   FOR MANY YEARS.

15       WE DO COMMEND HIM FOR AGREEING TO PAY $4,000 PER VICTIM IN

16   RESTITUTION, AND FOR PAYING THAT IN ADVANCE INSTEAD OF

17   SPENDING HIS TIME IN CUSTODY TRYING TO EVADE PAYMENT OF

18   RESTITUTION.

19       THERE'S A LITTLE CAVEAT THAT THAT WAS IN LIEU OF A BOND

20   FORFEITURE MOTION, BUT STILL HE COULD HAVE FOUGHT THE AMOUNT

21   PER VICTIM AT THIS POINT, AND DID AGREE TO THAT, AND THE

22   VICTIMS' COUNSEL ARE ALL VERY PLEASED THAT THEY WILL ACTUALLY

23   BE GETTING FUNDS FOR THE VERY NECESSARY RESTORATION AND

24   COUNSELING THAT THESE VICTIMS CONTINUE TO GO THROUGH.

25       ANOTHER MITIGATION FACT THAT WE MADE SURE WAS INCLUDED IN

1    THE PRESENTENCE REPORT IS THAT THERE HAVE BEEN NO CREDIBLE

2    ALLEGATIONS OF HANDS-ON SEXUAL MISCONDUCT INVOLVING

3    MR. BRESLIN.  THIS CASE RECEIVED PUBLICITY.  THERE WAS A

4    HOTLINE SET UP, AND NOBODY MADE CREDIBLE ALLEGATIONS OF ACTUAL

5    ABUSE.

6        HE HAS ENTERED A GUILTY PLEA, AND THAT AVOIDED THE TIME

7    AND RESOURCES THE GOVERNMENT AND THIS COURT WOULD HAVE USED

8    FOR A TRIAL.

9        NOW WE WILL GET INTO THE AGGRAVATING CIRCUMSTANCES.  FIRST

10   IS THE NATURE OF THE FILES THAT MR. BRESLIN POSSESSED.  THEY

11   WERE VERY DISTURBING.

12       AS THE COURT KNOWS FROM READING THE GOVERNMENT'S

13   SENTENCING MEMO, PAGES 4 THROUGH 5 DESCRIBING SOME OF THE

14   ORIGINAL FILES FOUND ON HIS HOME AND WORK LAPTOP COMMUTERS AND

15   OTHER STORAGE DEVICES AT HIS HOME AND OFFICE, VERY GRAPHIC,

16   VERY HORRIFIC TREATMENT OF YOUNG CHILDREN.

17       THEN AFTER ALL OF THESE COMPUTERS AND STORAGE DEVICES WERE

18   SEIZED FROM HIS HOME AND OFFICE, AND HE WAS CHARGED, FIRST IN

19   STATE COURT AND THEN LATER IN FEDERAL COURT WITH POSSESSION OF

20   CHILD PORNOGRAPHY, HE OBTAINED A NEW LAPTOP COMPUTER, KEPT IT

21   SECRET, A DIFFERENT THUMB DRIVE, AND CONTINUED TO ACCESS AND

22   POSSESS VERY DISTURBING CHILD PORNOGRAPHY FILES AS SUMMARIZED

23   IN PARAGRAPH 39 OF THE PRESENTENCE REPORT.

24       THERE'S NO DISPUTE THE NATURE OF THE HARM THAT THIS CRIME,

25   TRADING OF CHILD PORNOGRAPHY, DOES TO CHILDREN.  THE COURT

1    INDICATED IT REVIEWED ABOUT A FOOT WORTH OF VICTIM IMPACT

2    STATEMENTS AND DETAILED RESTITUTION REQUESTS.  IT IS FAIR TO

3    SAY THAT MANY OF THESE ARE HEARTBREAKING.  THEY DESCRIBE THE

4    CIRCUMSTANCES OF THE ORIGINAL ABUSE OF THE CHILDREN AND OFTEN

5    THE ONGOING IMPACT AND SOMETIMES MOTIVATING NATURE OF THE

6    ABUSE WAS TO CREATE IMAGES AND VIDEOS TO SHARE WITH PEOPLE

7    LIKE MR. BRESLIN.

8        ONE EXAMPLE IS THE BLUESPINK RESTITUTION REQUEST

9    DESCRIBING THE RAPE OF A SIX-YEAR-OLD GIRL AND TEN-YEAR-OLD

10   GIRL REPEATEDLY BY THEIR FATHER IN ORDER TO PRODUCE CHILD

11   PORNOGRAPHY, AND THE FACT THAT THE FATHER AGREED TO LET A MAN

12   HE MET ON THE INTERNET RAPE AND SEXUALLY ASSAULT HIS YOUNGER

13   DAUGHTER, THE SIX-YEAR-OLD, IN ORDER TO RECEIVE ADDITIONAL

14   PORNOGRAPHY MATERIALS FROM THAT MAN ON THE INTERNET.

15       IN THE VICKY SERIES WHERE THE COURT HAS RECEIVED THE

16   VICTIM IMPACT STATEMENT VIA VIDEO READING, THE ABUSER THERE

17   TOOK ORDERS FOR THE SPECIFIC TYPE OF SEXUAL CRIMES THAT HE

18   MIGHT VIDEO FOR HIS CUSTOMERS.  THEN HE SCRIPTED AND COSTUMED

19   VICKY'S ABUSE.  VICKY HAS BEEN STOCKED BY CHILD PORNOGRAPHY

20   ENTHUSIASTS ONLINE, AND ONE PERSON HAS BEEN CONVICTED IN

21   NEVADA OF STOCKING HER.

22       MR. BRESLIN POSSESSED CHILD PORNOGRAPHY FILES IN MASSIVE

23   QUANTITIES.  AFTER THE AGENT BOOKMARKED OVER 300,000 FILES,

24   THEY WERE EITHER CHILD PORNOGRAPHY OR CHILD EXPLOITATION

25   IMAGES FROM JUST HIS HOME LAPTOP COMPUTER, I ASKED HER TO

1    DEVOTE HER ENERGIES TO OTHER INVESTIGATIONS.

2        AS SOMEONE -- HE THEN HAD CHILD PORNOGRAPHY FILES ON HIS

3    WORK LAPTOP COMPUTER, EXTERNAL HARD DRIVES, THUMB DRIVES, AND

4    THEN WE KNOW DURING THE COURSE OF THIS CASE, AN ADDITIONAL

5    LAPTOP COMPUTER WITH DIFFERENT IMAGES AND THUMB DRIVE WITH

6    DIFFERENT IMAGES.

7        THE COURT'S ALREADY COVERED THIS, THE FACT THAT

8    MR. BRESLIN CLAIMED IT WAS A VICTIMLESS CRIME, AND IT DOES

9    SHOW HIS LACK OF CONCERN FOR THE WELL-BEING OF THESE CHILDREN.

10   AS SOMEONE WHO APPEARED IN COURT, BY HIS OWN ADMISSION,

11   HUNDREDS OF TIMES AS AN EXPERT WITNESS, SUPERIOR COURT FOR

12   CUSTODY-TYPE OF CASES, IT'S REALLY CALLOUS FOR HIM TO SAY IT

13   IS A VICTIMLESS CRIME, ESPECIALLY WHEN HE WAS FACING SERIOUS

14   CHARGES.

15       HE CALLED THE CHILD VICTIMS OF HORRIFIC TRAUMA LIKE LITTLE

16   CORPORATIONS WHO WERE JUST OUT TO GET HIS MONEY.

17       IN THE RECORDED CONVERSATIONS FROM JAIL AFTER HIS REMAND,

18   MR. BRESLIN WAS HOPEFUL THAT HIS NEPHEW WOULD DESTROY

19   EVIDENCE.  HE TRIED TO STOP HIMSELF FOR BLAMING FAMILY MEMBERS

20   THROUGH ALERTING THE COURT THAT HE WAS REOFFENDING AND WAS

21   REALLY HOPEFUL THAT THE GOVERNMENT WOULD NOT FIND THE MISSING

22   THUMB DRIVE THAT CONTAINED MORE EVIDENCE OF HIS CHILD

23   PORNOGRAPHY CRIMES.

24       WE BELIEVE THAT THERE IS A VERY HIGH RISK OF REOFFENDING,

25   LIKE THE COURT DOES, DESPITE THE UPDATED PSYCHOLOGICAL REPORT

1    BECAUSE HE'S ALREADY DEMONSTRATED THAT EVEN AFTER THE FIRST

2    BOND VIOLATION, MANY STRONG WARNINGS FROM JUDGE CORLEY, AND

3    THE SEVEN-WEEK STINT AT THE RESIDENTIAL RE-ENTRY CENTER, AND

4    HIS OUT-PATIENT COUNSELING, THE TRANSCRIPTS FROM THE BOND

5    VIOLATION HEARINGS ILLUSTRATE THE BOLD, INTENTIONAL, DIRECT

6    AND MOST FLAGRANT BOND VIOLATIONS THAT JUDGE CORLEY HAS SEEN

7    IN HER SIX YEARS ON THE BENCH.

8        MR. BRESLIN IS SOPHISTICATED ENOUGH TO HIDE HIS CONDUCT.

9    HE WAS APPARENTLY GOING TO RUSSIAN-BASED WEBSITES USING THE

10   ONION ROUTER WHICH OBSCURES THE ACTUAL USER'S IP ADDRESS.  HE

11   WAS USING ENCRYPTED DEVICES.  HE WAS ACCESSING DEPTH FILE

12   WHICH IS A SECURE CLOUD-BASED TYPE OF STORAGE DEVICE.

13       HE HAD THIS HIDDEN LAPTOP AND THUMB DRIVE THAT HE DID NOT

14   ADMIT TO PRETRIAL SERVICES OR THE COURT.  AND HE HID HIS CHILD

15   PORNOGRAPHY FILES UNDER CLIENT FOLDERS, INDICATING THAT HE

16   FELT NOBODY WOULD EVER LOOK AT THOSE DUE TO THE NATURE OF

17   CONFIDENTIAL CLIENT PSYCHOTHERAPIST COMMUNICATIONS.

18       WE BELIEVE HIS LETTERS AND HIS SUBSEQUENT CONVERSATIONS

19   WITH FAMILY MEMBERS AND FRIENDS TRY TO MINIMIZE HIS CRIMES.

20   WE HAVE ALREADY GONE OVER THE LACK OF ACCEPTANCE.

21       SO WITH RESPECT TO THE GUIDELINES BEING VERY HIGH, AS

22   APPLIED, WE UNDERSTAND THE GUIDELINES IN THIS CASE WENT FROM

23   WHAT WOULD HAVE BEEN MORE IN THE RANGE OF THE -- ABOUT

24   80-MONTH SENTENCE IF HE HADN'T COMMITTED THESE ADDITIONAL

25   CRIMES AND IF HE HAD ACCEPTED RESPONSIBILITY.

1    THE SIX-LEVEL INCREASE FOR CONTEMPT OF COURT PLUS NOT

2    GETTING ACCEPTANCE OF RESPONSIBILITY IS WHAT REALLY DRIVES THE

3    GUIDELINES MUCH HIGHER.

4    YOUR HONOR HAS THE ABILITY TO CHOOSE THE APPROPRIATE

5    SENTENCE THAT'S SUFFICIENT BUT NOT GREATER THAN NECESSARY.

6    AND IN THIS CASE, SOME PEOPLE ARGUE THAT THE GUIDELINES FOR

7    THE NUMBER OF IMAGES IS OVERSTATED.  WE WOULD RESPECTFULLY

8    SUBMIT THAT IF ANYTHING IN THIS CASE, THE FIVE-LEVEL INCREASE

9    FOR MORE THAN 600 IMAGES IS UNDERSTATED.  THE USE OF A

10   COMPUTER, ALTHOUGH IT APPLIES IN MOST CASES BROUGHT IN FEDERAL

11   COURT, SHOULD CERTAINLY APPLY BECAUSE OF THE NATURE OF HIS

12   CRIMES AND REPEATED VIOLATIONS.

13   SO WE UNDERSTAND THAT THIS COURT MOST LIKELY VIEWS THAT

14   SENTENCE AS MORE THAN NECESSARY TO MEET THE SENTENCING GOALS

15   AND SUBMIT TO YOUR DISCRETION, BUT WHAT DISTINGUISHES THIS

16   CASE FROM OTHERS IS MR. BRESLIN'S HISTORY AS A CHILD

17   PSYCHOLOGIST, WHICH HE IS NO LONGER PRACTICING, HIS VOLUME OF

18   IMAGES, THE NATURE OF IMAGES, AND THE REPEATED CONDUCT EVEN

19   WHILE ON RELEASE IN THIS CASE.

20   **THE COURT:**  MR. GOLDROSEN.

21   **MR. GOLDROSEN:**  THANK YOU, YOUR HONOR.

22   I DON'T WANT TO IN ANY WAY MINIMIZE MR. BRESLIN'S CONDUCT,

23   AND I THINK HE'S GOING TO SPEAK TO THE COURT AND TELL THE

24   COURT HIS EVOLUTION, AND I DON'T WANT TO IN ANY WAY TELL THE

25   COURT THAT WHAT HE DID AFTER, WHILE ON PRETRIAL RELEASE, HAS

1       ANY MITIGATION OR THERE'S ANY EXPLANATION FOR IT.

2           I DO THINK THAT THERE IS -- THAT THE PROCESS OF COMING TO

3       ACCEPT RESPONSIBILITY AND THE PROCESS CAN BE DIFFICULT.  IT

4       CAN BE PARTICULARLY DIFFICULT FOR SOMEONE IN MR. BRESLIN'S

5       POSITION; SOMEONE WHO HAS, AS WE'VE TALKED ABOUT, FOR DECADES

6       SEEN HIMSELF AS A LAW-ABIDING CONTRIBUTING MEMBER OF SOCIETY,

7       DOING GOOD FOR OTHER PEOPLE, WHO, LATER IN LIFE -- AND -- AND

8       THIS IS SOMETHING THAT I CAN'T OFFER YOU AN EXPLANATION AS TO

9       HOW THIS HAPPENED.

10          I CAN TELL YOU THAT THIS IS A RECENT TRANSGRESSION,

11      SOMETHING THAT WASN'T GOING ON UNTIL 2015, 2016.  I CAN TELL

12      YOU THERE WERE THINGS THAT HAPPENED IN MR. BRESLIN'S LIFE

13      WHICH WERE VERY DIFFICULT FOR HIM.  THE LOSS OF HIS FATHER IN

14      2014 TO WHOM HE WAS VERY CLOSE, TO WHOM WAS KIND OF A ROCK OF

15      STABILITY FOR HIM, THE LOSS OR THE BEING LEFT BY HIS WIFE

16      AROUND THE SAME TIME.  AND I UNDERSTAND, OBVIOUSLY THAT WAS

17      MR. BRESLIN'S FOURTH WIFE, BUT THAT WAS PARTICULARLY

18      SIGNIFICANT BECAUSE HE FELT THAT NOW WHO'S GOING TO BE ON HIS

19      OWN WITHOUT ANY COMPANIONSHIP FOR THE REST OF HIS LIFE.  AND

20      AS DR. FLINTON NOTED IN HIS REPORT, THERE ARE SIGNS OF EARLY

21      COGNITIVE PROBLEMS.

22          NOW, THESE CIRCUMSTANCES LEFT MR. BRESLIN IN A POSITION

23      WHERE HE WAS DEEPLY DEPRESSED.  IT LEFT HIM IN A POSITION

24      WHERE HE WAS... FELT THAT HE HAD LOST HIS WAY.  AND SOMEHOW,

25      SOME WAY, AND I CANNOT EXPLAIN IT TO THE COURT, HIS COLLECTION

1    OF CHILD PORNOGRAPHY AND VIEWING CHILD PORNOGRAPHY PROVIDED

2    SOME NEED FOR HIM, SATISFIED SOME NEED FOR HIM THAT I CAN'T

3    TELL YOU AND MR. BRESLIN CAN'T TELL YOU EITHER.

4        HE'S RECOGNIZING IT.  HIS... HE'S STRUGGLING TO DEAL WITH

5    IT, AND I THINK THAT'S INDICATIVE OF SOME OF THE COMMENTS HE

6    MADE WHICH WERE HORRIBLE COMMENTS THAT HE MADE TO HIS SISTER

7    AND TO FRIENDS HE SPOKE WITH.

8        IT'S BEEN A TOUGH ROAD FOR HIM TO REALIZE THAT HE IS A

9    CHILD PORNOGRAPHER, THAT HE HAS DONE THESE HORRIBLE THINGS

10   INVOLVING CHILDREN, THE VERY PEOPLE HE HAS BEEN HELPING ALL

11   THOSE YEARS.

12       I KNOW, I'VE MET WITH HIM MANY TIMES.  WE HAVE TALKED

13   ABOUT THE -- AND I'VE SHOWN HIM THE STATEMENTS FROM VICTIMS,

14   AND I HAVE HAD HIM READ THEM TO HELP HIM UNDERSTAND WHAT HE

15   DID.  AND I THINK HE IS GETTING IT.  IT TOOK, UNFORTUNATELY,

16   PUTTING HIM IN JAIL, PUTTING HIM IN JAIL FOR NINE MONTHS.  HE

17   UNDERSTANDS HE'S GOING TO PRISON.

18       HE ALSO UNDERSTANDS THAT WHEN HE GOES TO PRISON, THERE IS

19   A PROGRAM THERE, A PROGRAM THAT IS SUPPOSED TO HELP HIM.  AND

20   FROM WHAT I'VE READ, DOES HELP PEOPLE WHO PARTICIPATE IN THE

21   SEX OFFENDER TREATMENT PROGRAM.  AND FROM WHAT I UNDERSTAND

22   HAS A VERY GOOD SUCCESS RATE IN TERMS OF RECIDIVISM.

23       I KNOW THE COURT IS NOT CONFIDENT THAT MR. BRESLIN WILL

24   NOT BE A RECIDIVIST, BUT I THINK THAT IN THE CONTEXT OF AFTER

25   HE'S RECEIVED AND COMPLETED THIS PROGRAM, AFTER HE SPENT HIS

1    TIME IN CUSTODY, AT THE AGE HE IS GOING TO BE, ASSUMING HE'S

2    STILL ALIVE WHEN HE GETS OUT, HE IS NOT GOING TO BE A

3    RECIDIVIST, PARTICULARLY WHEN THE COURT TAKES A LOOK AT THE

4    STUDIES THAT HAVE BEEN DONE, AND DR. FLINTON'S EVALUATION WAS

5    PART OF THAT, SHOWING THAT THIS TYPE OF OFFENSE HAS A VERY LOW

6    RECIDIVIST RATE.

7        I THINK THAT AS HORRIBLE AS WHAT MR. BRESLIN DID, IT IS

8    STILL -- AND EVEN WITH ALL THE IMAGES YOU HAVE AND THE REPEAT

9    OFFENSE, IT IS STILL THE LOWER ECHELON OF CHILD PORNOGRAPHY

10   TYPE OF OFFENSES.  IT DID NOT INVOLVE, OBVIOUSLY,

11   DISTRIBUTION, PRODUCTION.  IT DID NOT INVOLVE CONTACT WITH ANY

12   MINORS.  IT DID NOT INVOLVE INTERNET CHATS WITH MINORS.  IT

13   DID NOT INVOLVE SOLICITATION OF MINORS.  IT DID NOT INVOLVE

14   SHOWING PORNOGRAPHY TO MINORS.

15       IT'S SIMPLY, AND AS HORRIBLE AS THIS IS, I UNDERSTAND IT,

16   IT WAS COLLECTING A LARGE AMOUNT FOR HIS OWN VIEWING TO

17   SATISFY SOME NEED THAT WE ARE TRYING TO FIGURE OUT AND

18   MR. BRESLIN IS HOPING HE CAN FIGURE OUT WHEN HE GOES TO PRISON

19   AND PARTICIPATES IN THIS PROGRAM.

20       I THINK THAT THE COURT HAS TO TAKE INTO CONSIDERATION AS A

21   SIGNIFICANT MITIGATING FACTOR ALL THE GOOD THINGS THAT HE HAS

22   DONE IN HIS CAREER.  LOOK AT THE TYPES OF EMPLOYMENT HE HAS

23   HAD AS A PSYCHOLOGIST WHEN HE FIRST STARTED OUT DOING HIS

24   WORK.  HE WORKED AT THE SAN MATEO COUNTY DEPARTMENT OF MENTAL

25   HEALTH.  HE WORKED AT THE SAN FRANCISCO JAIL PSYCHOLOGICAL

1    SERVICES, INSTITUTE OF CHILD PSYCHOLOGY, THE TENDERLOIN

2    PSYCHOLOGIST SERVICES.  HE DEVOTED A SUBSTANTIAL PART OF THE

3    BEGINNING OF HIS CAREER WORKING WITH PEOPLE FROM DISADVANTAGED

4    BACKGROUNDS, PEOPLE WHO HAVE SUFFERED ALL KINDS OF TRAUMA, AND

5    THEN HE WENT ON TO HIS PRIVATE PRACTICE.

6         I KNOW THE COURT HAS SEEN THE LETTERS FROM PATIENTS WHO

7    DESCRIBE A THERAPIST, I THINK IS ACCURATELY DESCRIBED AS

8    SOMEONE WHO IS EXTRAORDINARY, EXTRAORDINARY IN HIS COMPASSION

9    FOR HIS PATIENTS, EXTRAORDINARY IN THE EFFECTIVENESS OF HIS

10   TREATMENT FOR HIS PATIENTS, EXTRAORDINARY IN THE COMMITMENT TO

11   HIS PATIENTS.  YOU'VE SEEN THE LETTERS FROM HIS FAMILY MEMBERS

12   ABOUT HIS LEAVING SOCIAL FUNCTIONS TO DEAL WITH HIS PATIENTS.

13        YOU'VE READ THE LETTER FROM THE PATIENT WHO SAID HE ONLY

14   CHARGED $35 AN HOUR TO HELP HER BECAUSE SHE DIDN'T HAVE THE

15   KIND OF MONEY THAT ONE WOULD TYPICALLY PAY FOR THE THERAPIST.

16   THAT SHOWS A PERSON WITH TREMENDOUS COMPASSION, TREMENDOUS

17   EMPATHY.

18        HOW WE GET FROM THERE TO HERE, I'M SORRY, I CAN'T TELL THE

19   COURT.  HOW THE EMPATHY HE COULD FEEL FOR HIS PATIENTS HASN'T

20   YET KICKED IN, BUT I AM CONFIDENT THAT IT WILL KICK IN WHEN HE

21   GETS THAT TREATMENT AND WHEN HE DOES HIS TIME.  I JUST DON'T

22   THINK WE NEED TO LOCK HIM UP AND THROW HIM AWAY FOREVER.

23        YOU'VE SEEN THE LETTERS FROM THE FAMILY.  IT TALKS ABOUT

24   HOW CONTRIBUTING... HOW MUCH HE CONTRIBUTED TO HIS FAMILY, TO

25   HIS CHILDREN, TO HIS SISTER, COMPASSION, HIS UPBEAT, THE

1    NATURE THAT HE HAD WITH EVERYBODY, HOW MUCH EVERYONE LIKED

2    HIM, HOW DEDICATED HE WAS AS A FAMILY MEMBER.

3        I'M NOT GOING TO TALK ABOUT THE GUIDELINES BECAUSE I THINK

4    THE COURT HAS SEEN MY BRIEFING AND I THINK THAT THAT IS

5    ACCURATE.

6        THE ONLY OTHER THING I WOULD POINT OUT IS THE SUPERVISED

7    RELEASE RELEASE CONDITIONS THAT ARE RECOMMENDED ARE VERY

8    STRINGENT.  THEY REQUIRE CLOSE MONITORING OF DR. BRESLIN'S

9    COMPUTER USE, CLOSE MONITORING OF CONTACT WITH CHILDREN.  WE

10   HAVE NO OBJECTIONS TO ANY OF THESE VERY STRINGENT GUIDELINES.

11       HE'S GOING TO BE ON SUPERVISED RELEASE FOR A LONG TIME,

12   FIVE YEARS, GIVEN HIS STAGE OF LIFE.  AND SO I THINK THE

13   COMBINATION OF A LESS THAN GUIDELINE SENTENCE IN WHICH HE'S

14   GOING TO GET THE TREATMENT, THE STRINGENT SUPERVISED RELEASE

15   CONDITIONS WILL BE ENOUGH TO MAKE SURE THAT HE DOES NOT

16   REOFFEND.

17           **THE COURT:**  MS. MAR, ANYTHING TO ADD?

18           **PROBATION OFFICER:**  NO, YOUR HONOR.

19           **THE COURT:**  MR. BRESLIN, YOU HAVE THE RIGHT AT YOUR

20   SENTENCING TO ADDRESS THE COURT.  WOULD YOU LIKE TO DO SO?

21           **THE DEFENDANT:**  YES, YOUR HONOR.

22           **THE COURT:**  ALL RIGHT, SIR.

23               (PAUSE IN THE PROCEEDINGS.)

24           **THE DEFENDANT:**  THANKS.

25       I WANT TO MAKE CLEAR THAT I DO TAKE FULL RESPONSIBILITY

1   FOR MY BEHAVIOR; THAT ANYTHING I OFFER BY WAY OF BACKGROUND OR

2   EXPLANATION IS NOT MEANT TO EXCUSE OR RATIONALIZE MY BEHAVIOR.

3   WHAT I DID WAS WRONG AND I SHOULD HAVE KNOWN BETTER.

4        I LOOKED AT THOSE IMAGES AND I KNEW I WAS ON A SLIPPERY

5   SLOPE, YET I CONSCIOUSLY, DELIBERATELY, KNOWINGLY DID IT

6   ANYWAY.  I'M ASHAMED AND DISAPPOINTED IN MYSELF.

7        AS HAS BEEN MENTIONED, SHORTLY AFTER I WAS INCARCERATED, I

8   REMARKED IN A PHONE CALL THAT MY CRIME WAS VICTIMLESS.  OF

9   COURSE THAT'S NOT TRUE.  I'VE STUDIED AND TREATED VICTIMS OF

10  SEXUAL ABUSE FOR OVER 40 YEARS... AND I RECOGNIZE THE DANGER

11  TO CHILDREN WHO, IN THE CARE OF OLDER SIBLINGS OR TRUSTED

12  ADULTS, TAKE THEIR EMOTIONAL SCARS WITH THEM THROUGHOUT THEIR

13  LIVES REGARDLESS OF THE SUCCESS OF TREATMENT.

14       SO WHY DID I SAY IT?  THE TRUTH IS I HADN'T COME TO TERMS

15  WITH WHAT I HAD DONE, WITH THE SERIOUSNESS OF MY OFFENSE.  IT

16  TOOK ME... IT TOOK BEING INCARCERATED AND LOSING MY FREEDOM

17  FOR ME TO FINALLY UNDERSTAND THE SERIOUSNESS OF MY BEHAVIOR.

18       I WASN'T INFLICTING DIRECT HARM TO A CHILD, BUT I WAS

19  EFFECTIVELY SANCTIONING THAT HARM WITH EVERY VIEWING, AND IT'S

20  TAKEN ME THIS LONG TO GET IT.

21       AS TO THE OTHER PEOPLE THAT I HAVE HARMED BY MY CONDUCT,

22  MY FAMILY, MY FRIENDS, MY COLLEAGUES, MY FORMER PATIENTS, I

23  SINCERELY APOLOGIZE.  I HAVE HUMILIATED AND EMBARRASSED MY

24  FAMILY AND FRIENDS.  I LOST THE RESPECT OF MY COLLEAGUES.

25  I'VE GIVEN A BLACK EYE TO MY PROFESSION AND I JEOPARDIZED THE

1    PROGRESS OF MY PATIENTS.  I AM SO SORRY FOR BEING SO

2    THOUGHTLESS.

3        WITH THAT SAID, I WANT TO THANK EVERYBODY WHO HAS COME TO

4    SUPPORT ME TODAY.  YOU DON'T KNOW HOW MUCH THIS IS IMPORTANT

5    FOR ME THAT YOU ARE HERE.

6        DESPITE ALL MY -- SORRY, SHAME, REGRET, REMORSE THAT I AM

7    FEELING, I AM ALSO VERY PROUD AND THANKFUL WITH MY

8    RELATIONSHIP WITH EACH OF YOU.

9        I HAVE BEEN PRETTY ANXIOUS ABOUT TODAY.  ON THE ONE HAND

10   THE UNCERTAINTY OF THE PAST 19 OR 20 MONTHS WILL BE CLARIFIED

11   AND THE COURT -- BY THE COURT, AND I'LL KNOW MY FATE.  ON THE

12   OTHER HAND I'M TERRIFIED ABOUT GOING TO PRISON.  I'M ALMOST 70

13   AND MY HEALTH HAS BEEN POOR, AND I'M JUST AFRAID THAT WILL BE

14   IT FOR ME.

15       I WOULD LIKE TO SPEAK A LITTLE BIT ABOUT MY PERSONAL LIFE

16   AND PROFESSIONAL LIFE, BUT VERY BRIEFLY.  MY PARENTS WERE BOTH

17   BORN AND RAISED IN THE PHILIPPINES.  THEY MET AND MARRIED IN

18   WORLD WAR II, AND WITH MY SISTER ELIZABETH, WHO WAS ONLY

19   SEVERAL MONTHS OLD IN 1945, THEY BARELY ESCAPED THE BOMBS

20   BEING DROPPED ON MANILA AT THE END OF THE WAR.

21       AS MY FATHER WAS BORN AN AMERICAN CITIZEN, THEY WERE ABLE

22   TO HITCH A RIDE ON AN AMERICAN WARSHIP, AND IT ARRIVED IN SAN

23   FRANCISCO IN AUGUST OF 1945.  THEY EVENTUALLY RELOCATED TO SAN

24   CARLOS, THAT'S DOWN IN THE PENINSULA, WHERE WE LIVED UNTIL I

25   GRADUATED FROM HIGH SCHOOL IN 1966.

1   EVEN THROUGH MY REBELLIOUS YEARS, MY FOLKS WERE ALWAYS

2   SUPPORTIVE AND THEY ENCOURAGED ME TO STAND UP FOR MY BELIEFS.

3   I CAN SPEAK FOR MY SISTER WHEN I SAY THAT WE BOTH FEEL THAT WE

4   WERE REALLY LUCKY TO HAVE THEM AS PARENTS.

5   MOM AND DAD PASSED AWAY IN THE LAST 12 YEARS.  MOM IN

6   2006, AFTER SEVEN YEARS' STRUGGLE WITH ALZHEIMERS.  DAD,

7   ALMOST 91, IN 2014 AFTER AN UNFORTUNATE SERIES OF EVENTS.

8   MY SISTER IS MY ONLY SIBLING, AND WE HAVE BEEN CLOSE MOST

9   OF OUR LIVES.  WE RAISED OUR CHILDREN AND GRANDCHILDREN TO BE

10   CLOSE, AND WE CELEBRATE MOST HOLIDAYS TOGETHER.

11   I HAVE THREE GREAT KIDS AND ONE GRANDDAUGHTER WHO IS TEN

12   AND A HALF, ALLISON.  MY OLDEST, ELLEN, IS A PHYSICIAN AND

13   PRACTICES MEDICINE IN SAN DIEGO.  MY SECOND, KATIE ROSE, IS

14   A -- HAS A MASTER'S DEGREE IN WOMEN'S STUDIES AND IS ABOUT TO

15   BEGIN TEACHING ENGLISH AT THE URBAN SCHOOL IN SAN FRANCISCO IN

16   AUGUST.  AND MY YOUNGEST, SAMUEL, HE TAKES AFTER HIS

17   GRANDFATHER, WHO'S BEEN A CARPENTER, BUT HE IS ABOUT TO BEGIN

18   A GRADUATE STUDY IN NEW YORK AT BARD COLLEGE.

19   MY PROFESSIONAL LIFE HAS SPANNED 45 YEARS.  FOR 25 OF

20   THOSE YEARS, I DEDICATED MY LIFE TO HELPING CHILDREN WHO WERE

21   VICTIMS OF SEXUAL OR PHYSICAL ABUSE RECOVERING FROM PTSD.  I

22   ALSO SPENT SEVERAL YEARS WORKING WITH CHILDREN WITH TERMINAL

23   ILLNESS.

24   IN 1992, I OPENED A TRAINING CLINIC IN CONTRA COSTA COUNTY

25   AND NAMED IT A CHILD'S POINT OF VIEW.  I WAS THE

```
1    OWNER/DIRECTOR FOR A STAFF OF 18 MENTAL HEALTH PROFESSIONALS
2    AND DOCTORATE-LEVEL INTERNS.
3        WE WORKED WITH THE CALIFORNIA VICTIMS OF CRIME PROGRAM,
4    CONTRA COSTA CHILD PROTECTIVE SERVICES, AND SEVERAL LOCAL
5    POLICE AGENCIES DEALING WITH AN INCREASED NUMBER OF SEXUAL
6    ABUSE CASES.  THE CLINIC OPERATED FOR TEN YEARS UNTIL 2001,
7    2002.  I RETIRED FROM DOING CHILD PSYCHOTHERAPY SHORTLY
8    THEREAFTER, MAYBE A YEAR OR TWO LATER, DUE TO A BACK INJURY.
9    I'M KIND OF SUFFERING FROM IT TODAY.
10       YOUR HONOR, I WANT TO REMIND THE COURT THAT I HAVE NOT
11   OPERATED AS A CHILD PSYCHOLOGIST NOR HAVE I BEEN A DIRECTOR OF
12   A CHILD'S POINT OF VIEW FOR OVER 15 YEARS.  THE PRESS WAS
13   MISINFORMED SOMEHOW WHEN I WAS FIRST ARRESTED IN OCTOBER OF
14   2016.  AND IT HAS CONTINUED TO STATE THOSE MISCONCEPTIONS.
15       FINALLY, I WANT TO MENTION MY WORK WITH JUVENILE ADULT
16   SEXUAL OFFENDERS FOR THE LAST 25 YEARS.  FOR PATIENTS WHO
17   POSSESSED CHILD PORNOGRAPHY, MY PROFESSIONAL BOUNDARIES WERE
18   ALWAYS WELL-DEFINED.  MY RESPECT FOR VICTIMS HAS ALWAYS BEEN
19   IN THE FOREFRONT OF MY MIND WHILE PRACTICING PSYCHOLOGY.  I
20   NEVER VIOLATED THE LAW DURING MY CAREER.  AND I'M MOST PROUD
21   THAT DURING MY ENTIRE CAREER, THERE IS NOT A SINGLE COMPLAINT
22   FILED WITH THE CALIFORNIA BOARD OF PSYCHOLOGY OR CONSUMER
23   AFFAIRS.
24       I'VE ALWAYS STRIVED TO BE ON THE RIGHT SIDE OF THE LAW.
25   MY KIDS WOULD ATTEST THAT I HARDLY EVEN EXCEED THE SPEED
```

```
 1    LIMIT.  I DON'T THINK SMOKE TOBACCO OR MARIJUANA.  I DON'T

 2    DRINK ALCOHOL.  I DON'T TAKE DRUGS, NONPRESCRIPTION DRUGS.

 3    BUT IN 2014, A SERIES OF EVENTS TURNED MY LIFE UPSIDE DOWN.

 4         FIRST, WE LOST OUR DAD IN APRIL.  I WAS SPENDING AVAILABLE

 5    WEEKENDS WITH HIM AND I HELD HIM -- I HELD MYSELF RESPONSIBLE

 6    FOR HIS HEALTH DECLINE IN SOME WAYS.  SEVERAL MONTHS LATER, IN

 7    2015, I LOST MY WIFE AND MY MARRIAGE, AND I COMPLETELY DIDN'T

 8    SEE THAT COMING.

 9         MY MENTAL HEALTH JUST SPIRALED OUT OF CONTROL.  AND BY

10    2016, I HAD LOST MY WAY.  IT HAS TAKEN ME SOME TIME TO COME TO

11    TERMS WITH MY PROBLEM WITH CHILD PORNOGRAPHY.  I NOW SEE HOW I

12    DIDN'T TAKE SERIOUSLY THE DEGREE OF MY PROBLEM.  STILL, THAT

13    DOESN'T EXCUSE MY BEHAVIOR, AND I ONLY HOLD MYSELF TO BLAME.

14         AS I MENTIONED BEFORE, THESE LAST NINE MONTHS WAS KIND OF

15    A BLESSING IN DISGUISE.  I HAD NINE MONTHS TO THINK AND

16    REFLECT ON THIS DARK PERIOD OF MY LIFE AND ABOUT THE CRIME

17    THAT I HAD COMMITTED.  I'M FULLY COMMITTED TO A FULL RECOVERY.

18         I RECOGNIZE NOW THAT POSSESSING CHILD PORNOGRAPHY IS

19    HARMFUL TO CHILDREN BY WAY OF PARTICIPATING IN THE LINE OF

20    ABUSIVE BEHAVIOR TOWARD THEM.  I ALSO NOW UNDERSTAND THE

21    ADDICTIVE NATURE OF ALL -- PORNOGRAPHY OF ANY KIND.

22         DESPITE THE YEARS I SPENT TREATING SEX OFFENDERS,

23    CHILDREN, I WAS BLIND TO THE DANGERS OF POSSESSING CHILD

24    PORNOGRAPHY PRESENTED.  AGAIN, THAT DOESN'T EXCUSE MY

25    BEHAVIOR, IT DOESN'T AT ALL, BUT IT DOES HELP TO UNDERSTAND
```

1    ME.

2        I'M COMMITTED TO A FULL RECOVERY, AS I SAID, AND I WILL

3    ABIDE BY THE COURT'S DECISION OF COURSE, AND WILL PARTICIPATE

4    IN ANY RECOMMENDED TREATMENT.

5        THANK YOU, YOUR HONOR.

6            **THE COURT:**  THANK YOU, SIR.

7        ANYTHING ELSE FROM THE GOVERNMENT?

8            **MS. MCCALL:**  SUBMITTED, YOUR HONOR.

9            **THE COURT:**  MR. GOLDROSEN?

10           **MR. GOLDROSEN:**  I WOULD JUST ASK THE COURT TO

11   RECOMMEND THE SEX OFFENDER TREATMENT PROGRAM AND A FACILITY

12   CLOSE TO THE BAY AREA.

13           **THE COURT:**  IS THERE ONE THAT YOU KNOW OF?

14           **MR. GOLDROSEN:**  IS THE COURT ASKING IF THERE IS A SEX

15   OFFENDER TREATMENT PROGRAM CLOSE TO THE BAY AREA?

16           **THE COURT:**  CORRECT.

17           **MR. GOLDROSEN:**  I DON'T BELIEVE THAT THERE IS.  I

18   THINK WHAT HAPPENS, DEPENDING ON THE LENGTH OF THE TERM, THAT

19   HE WILL BE IN A SEX OFFENDER TREATMENT PROGRAM DURING THE LAST

20   PART OF HIS TERM.  IF THE SENTENCE IS LONGER THAN NEEDED FOR

21   THAT, THEN I WOULD ASK -- I OBVIOUSLY WOULD WANT HIM IN THE

22   BAY AREA FIRST AND GO TO WHEREVER HE IS GOING TO HAVE HIS

23   TREATMENT DEPENDING ON THE LENGTH OF THE TERM.

24           **THE COURT:**  I UNDERSTAND THAT THE GOVERNMENT IS

25   ASKING FOR A MANDATORY 10K FINE UNDER SECTION -- TITLE 18,

```
1    SECTION 3014?
2            MS. MCCALL:  YES, YOUR HONOR.  THE SPECIAL ASSESSMENT
3    OF $5,000 APPLIES TO BOTH COUNTS ONE AND TWO.  SO THE TOTAL
4    AMOUNT OF SPECIAL ASSESSMENT IS $10,300 FOR THIS CASE SINCE
5    MR. BRESLIN IS NOT INDIGENT.
6            MR. GOLDROSEN:  JUST ON THAT POINT, YOUR HONOR, I
7    BELIEVE WHILE PROBATION HAS RECOMMENDED A FINE, THE GOVERNMENT
8    IS NOT ASKING FOR A FINE IN ADDITION TO THE SPECIAL
9    ASSESSMENT.
10       WE WOULD ASK THAT IN LIGHT OF THE HUNDRED THOUSAND DOLLARS
11   THAT HAS BEEN SET ASIDE, WHICH IS PRETTY MUCH GOING TO BE
12   CONSUMED BY RESTITUTION TO THE VICTIMS AND A SPECIAL
13   ASSESSMENT, THE COURT NOT IMPOSE AN ADDITIONAL FINE.
14           MS. MCCALL:  THAT'S CORRECT.  I WAS SPEAKING ABOUT
15   THE SPECIAL ASSESSMENT AND NOT A FINE.
16           THE COURT:  ALL RIGHT.
17       IS THERE ANY REASON WHY SENTENCE SHOULD NOT NOW BE
18   IMPOSED, MR. GOLDROSEN?
19           MR. GOLDROSEN:  NO.
20           THE COURT:  BEFORE I IMPOSE A SENTENCE, MR. BRESLIN,
21   I'M GOING TO REVIEW FOR YOU AND FOR ANY MEMBER OF THE PUBLIC
22   WHO WISHES TO LISTEN SOME OF THE THINGS THAT I READ AND
23   LEARNED AS I WAS WORKING ON YOUR CASE.
24       FOR THOSE WITH SENSITIVE EARS, YOU MAY WANT TO LEAVE
25   QUIETLY.
```

1          I WAS REALLY TAKEN IN THIS CASE BY THE LACK OF

2    UNDERSTANDING AND APPRECIATION FOR THE HARM THAT HAPPENS

3    BECAUSE OF THIS CRIME.  PEOPLE SEEM TO THINK THAT POSSESSION

4    IS VICTIMLESS, AND IT'S NOT.  IT HAS SIGNIFICANT REAL EFFECTS

5    ON REAL PEOPLE, AND THERE IS A REASON WHY WE PUNISH PEOPLE WHO

6    ENGAGE IN THIS CONDUCT.  AND PART OF THAT PUNISHMENT SERVES AS

7    A DETERRENCE TO OTHERS TO NOT GO DOWN THAT PATH AND TO AVOID

8    IT AT ALL COSTS.  AND IF YOU FIND YOURSELF AT THAT SLOPE, TO

9    GO AND SEEK HELP.  AND IF YOU DON'T, YOU WILL BE PUNISHED.  WE

10   CANNOT TOLERATE IT IN THIS SOCIETY.

11         PART OF THE LAW IS NOT JUST ABOUT REHABILITATION.  WE HAVE

12   TO PROMOTE RESPECT FOR THE LAW.  AND TO -- YOU KNOW, AT THE

13   START, WHEN I TOLD YOU PROBATION WAS NEVER AN OPTION FOR YOU,

14   IT'S BECAUSE I DON'T BELIEVE THAT IN THIS SOCIETY WE CAN SAY

15   WE'RE GOING TO GIVE YOU SOME EDUCATION AND SLAP YOU ON THE

16   HAND FOR ENGAGING IN THIS KIND OF CONDUCT.

17         I HAVE BEEN ASKED SPECIFICALLY BY THE VICTIMS IN THE VICKY

18   SERIES TO READ AT THE SENTENCING THE VICTIM'S HUSBAND'S IMPACT

19   STATEMENT.  THAT WAS A SPECIFIC REQUEST MADE AS PART OF THIS

20   CASE, AND I AM GOING TO HONOR THAT REQUEST.

21         THIS IS FROM -- THIS IS A LETTER TO THE DEFENDANT FROM

22   VICKY, WHO IS THE VICKY IN THE VICKY SERIES, FROM HER HUSBAND.

23   IT READS AS FOLLOWS:

24              "IN MY HOME, EVERY DAY IS RIDDLED WITH CHALLENGES.

25         EACH WITH ITS OWN CHALLENGES THAT PLAGUE THE MIND AND

1          SEAR A BROKEN HARD TOWARDS CALLOUS OBSCURITY.  WE

2          CHASE THE GHOST OF THE PAST AND THE BATTLE, THE

3          PHANTOMS THAT KEEP THE DARK CIRCULATING.

4          "UNFORTUNATELY TIME CAN'T HEAL ALL THINGS.  THIS IS

5          ESPECIALLY TRUE AS WE FACE THE PERSECUTION OF A WOUND

6          OPENED AGAIN AND AGAIN FOR THE PLEASURE OF STRANGERS.

7          YOU HAVE IMPACT MORE THAN YOU KNOW.

8          "IT IS OUR DESIRE NOT ONLY THAT JUSTICE BE SERVED,

9          BUT THAT TRUE CHANGE WOULD BE ENACTED THROUGH THE

10         ENLIGHTENMENT OF THIS UNFORTUNATE SITUATION.

11         "I ASSURE YOU THAT CHILD PORNOGRAPHY IS NOT A

12         VICTIMLESS CRIME.  THESE ARE NOT THE RECORDED TALES

13         OF MUTUAL LOVE, BUT THE VIOLATION OF A CHILD'S TRUST

14         AND THE SAVAGE DESTRUCTION OF THEIR CHILDHOOD

15         RESULTING IN A FRACTURED AND UNFORGIVING ADULTHOOD.

16         THERE ARE MANY EFFECTS OF CHILD PORNOGRAPHY, SOME

17         MORE EXTREME THAN OTHERS.

18         "MY WIFE SUFFERS FROM THE DISASSOCIATIVE PERSONALITY

19         DISORDER, WHICH MEANS HER MEMORY SHUTS OFF TO PROTECT

20         HER FROM TRIGGERS TO PERCEIVE TRAUMA.  MANY OF THESE

21         TRIGGERS, SOME AS SIMPLE AS A WORD HAVE BEEN

22         DISCOVERED, BUT AS YOU MIGHT GUESS, THERE ARE STILL

23         SOME NEW SCENARIOS ENCOUNTERED ALL THE TIME.

24         "WE ARE STILL UNABLE TO CELEBRATE HER BIRTHDAY

25         BECAUSE OF THE EVENTS THAT WERE BEYOND HER CONTROL,

1          AND THE EFFECTS STILL LINGER TODAY.  HER FAMILY MUST

2          GUARD OUR PERSONALITIES VERY CLOSELY WHEN USING

3          SOCIAL MEDIA OR OTHER INTERNET ACCOUNTS.

4          "WE HAVE BEEN PLAGUED BY STOCKER AFTER STOCKER

5          CALLING THEMSELVES FANS AND BEING OBLIVIOUS TO THE

6          DAMAGE THEY ARE CAUSING A SURVIVOR OF ONE OF THE MOST

7          TRAUMATIC EVENTS A HUMAN CAN EXPERIENCE.

8          "MY AIM IS NOT TO HURT YOU WITH THESE WORDS.  I PRAY

9          THAT YOU WERE UNAWARE OF THE DAMAGE YOU HAVE CAUSED.

10         MY GREATEST HOPE IS THAT WE CAN MEET WITH THE

11         REALIZATION THAT CHILD PORNOGRAPHY MUST STOP.  THERE

12         ARE TOO MANY LITTLE GIRLS WITH BROKEN HEARTS WALKING

13         AROUND FEELING EMPTY BECAUSE SOMEONE WANTED WHAT WAS

14         NOT THEIRS AND THEN TOOK IT BY FORCE AND COERCION.

15         YOU ARE A PARTICIPANT IN THAT CRIME.  YOU BECAME PART

16         OF THE PROBLEM.

17         "I AM ASKING YOU NOW TO HELP US MAKE AMENDS FOR YOUR

18         SINS AND THE SINS OF MANY.  PLEASE SPEAK OUT AGAINST

19         THIS ACT, IMPACT THE WORLD AROUND YOU FOR GOOD AND

20         TURN AWAY FROM WHAT I CAN ONLY DESCRIBE AS A GREAT

21         EVIL IN OUR MIDST.  THIS EVIL CREEPS INTO THE LIVES

22         OF OTHERWISE GOOD MEN AND BEGINS TO CORRUPT THE

23         HEART.

24         "AM I IMPERFECT?  AND SO HOW COULD I EXPECT YOU TO

25         BE, FOR I AM IMPERFECT.  YOU HAVE BEEN ALREADY

1             FORGIVEN AND I WANT NOTHING MORE THAN YOUR FULL

2             RESTORATION WITHOUT THE MAR OF YOUR PAST HABITS AND

3             APPETITES.

4             "UNFORTUNATELY THAT MEANS CONSEQUENCES, THOSE THAT

5             CHALLENGE YOU AND PLACE YOU IN NEW SCENARIOS IN LIFE.

6             I BELIEVE THAT GOD HAS A PLAN FOR YOU.  HE HAS NOT

7             CAST YOU ASIDE OR CONDEMNED YOU OUTRIGHT.  PLEASE

8             CONSIDER THE WAYS YOU CAN TURN YOUR PERSPECTIVE

9             AROUND.  EXPERIENCE TRUE REPENTANCE AND WALK FREELY

10            AS A MAN REDEEMED.

11            "I DON'T WISH YOU PAIN.  I DON'T WISH YOU SORROW.  I

12            ONLY ASK YOUR ASSISTANCE IN PUTTING THE LIGHT BACK IN

13            SO MANY BROKEN LITTLE GIRLS' EYES.  HELP PUT AN END

14            TO CHILD PORNOGRAPHY.  YOU HAVE MORE IMPACT THAN YOU

15            KNOW."

16         FROM THE AT SCHOOL SERIES.  THIS IS VIOLET, HER MOTHER,

17    WHO READS -- WHO SENDS A NOTE SAYING:

18            "KNOWING THAT PEOPLE ALL OVER THE WORLD CAN CONTINUE

19            TO EXPLOIT HER IS OF THE DEEPEST CONCERN.  WE DREAD

20            THE DAY WE MUST TELL HER, OUR CHILD, HER ABUSE WAS

21            VIDEOTAPED AND DISTRIBUTED ALL OVER THE INTERNET.

22            ONCE SHE FULLY COMPREHENDS HOW HER SUFFERED ABUSE HAS

23            BEEN SPREAD AROUND THE INTERNET FOR OTHERS TO QUOTE

24            'ENJOY' CLOSE QUOTE, IT WILL SHATTER HER SOUL.

25            "I REPEAT, WE ARE NOT AFRAID OF HER PHYSICAL AND

MENTAL HEALTH -- WE ARE AFRAID FOR HER PHYSICAL AND
MENTAL HEALTH.  WHILE OUT SHOPPING OR EATING AT A
RESTAURANT, WE ARE CONSTANTLY WORRIED AND AFRAID ONE
OF THESE ONLINE MONSTERS WILL RECOGNIZE HER FROM THE
VIDEOS.  IF SHE'S RECOGNIZED, WHAT STOPS THEM FROM
APPROACHING HER, KIDNAPPING HER.  AS A MOTHER THIS IS
MY WORST FEAR.

"THERE IS NO TELLING HOW MUCH COUNSELING SHE WILL
NEED.  A SEXUAL ABUSE ACT ITSELF IS ONE ASPECT TO
HEAL FROM, BUT THE MORE CHALLENGING ASPECT IS THE
SIMPLE ABUSE -- FACT THAT HER ABUSE IS FOREVER
AVAILABLE ONLINE."

THIS IS FROM SARAH, IN THE SARAH SERIES, THE MARINELAND
SERIES.  IT READS:

"DURING THE CRIMINAL PROSECUTION OF HER ABUSER, SARAH
WAS INFORMED OF THE EXISTENCE OF PHOTOS AND VIDEOS.
IT WAS ANOTHER BLOW WHICH SHE HAD TO ABSORB.

"THE EXISTENCE OF HER PICTURES ON THE WEB BECAME EVEN
MORE CONCRETE AND FRIGHTENING FOR HER WHEN, AS A
YOUNG ADULT, IN THE MIDST OF HAVING A VIDEO CHAT WITH
A GIRL SHE MET ONLINE, THE GIRL SENT HER A LINK TO A
WEBSITE.  THE GIRL GAVE NO DESCRIPTION OF WHAT THE
LINK WAS.  WHEN SARAH CLICKED ON IT, SHE FOUND THE
PICTURES OF HERSELF AS A CHILD BEING SEXUALLY ABUSED.
SHE HAD NEVER SEEN THE PHOTOS, AND IT PUSHED THEM

1       FROM HER CONSCIENCE, MEMORIES.

2       "WHILE IT MAY SEEM COUNTERINTUITIVE, THE

3       PSYCHOLOGICAL PROBLEMS WHICH CAUSE THE MOST

4       FUNCTIONAL PROBLEMS FOR SARAH STEM FROM THE FEAR SHE

5       HAS DAY-TO-DAY OF BEING FOUND AND HARASSED BY CURRENT

6       CHILD PORNOGRAPHY CONSUMERS.

7       "THE ORIGINAL PERPETRATOR IS LOCKED AWAY IN JAIL AND

8       SHE KNOWS SHE'S SAFE FROM HIM, BUT SHE CONTINUES TO

9       BE AFRAID OF BEING RECOGNIZED BY OTHERS OR BEING

10      SOUGHT OUT BY THOSE WHO HAVE DOWNLOADED HER IMAGES.

11      THIS LIMITS HER ABILITY TO RETURN TO NORMALCY."

12      SHE HERSELF WRITES THAT SHE'S AFRAID THAT SOMEONE FROM THE

13      POLICE WILL CALL AND TELL ME THEY FOUND MORE PICTURES OF ME ON

14      OTHER PEOPLE'S COMPUTERS.  EVERY TIME SOMEONE ELSE SEES

15      PICTURES OF VIDEOS OF ME, IT FEELS LIKE THEY ARE THE ONES WHO

16      HURT ME TO BEGIN WITH.  IT FEELS LIKE THEY ARE THE ONES WHO

17      DID THIS TO ME, LIKE THEY ARE... THAT THEY JUST WANT TO USE ME

18      FOR THEIR OWN PLEASURE.  IT IS LIKE I AM HERE FOR OTHER

19      PEOPLE'S PLEASURE, AND I AM NOT A PERSON MYSELF WITH MY OWN

20      WANTS AND NEEDS.

21      I NEED HELP.  I HAVE NEVER BEEN ABLE TO HAVE ANY

22      COUNSELING OR THERAPY OR SOMEONE TO TALK TO TO HELP ME DEAL

23      WITH MY FEARS AND MY NIGHTMARES AND MY PROBLEMS IN GETTING

24      ALONG IN LIFE.

25      FROM AARON AND FIONA, THE BLUE -- PINKSBLUE CHILD SERIES.

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

```
1    THIS IS FROM HER LAWYER AND A VICTIM'S MOTHER:

2        "AMONG THE IMAGES" -- WELL... "OR BECAUSE OF THE IMAGES,"

3    THE MOTHER WRITES:

4            "MY DAUGHTER IS THE VICTIM IN THIS CRIME HAVE

5            RECEIVED LIFE SENTENCES.  THE TRAUMAS THEY HAVE

6            ENDURED WILL CONTINUE TO PLAY ITS WAY OUT FOR THE

7            REST OF THEIR LIVES FOR THEY ARE RE-VICTIMIZED EVERY

8            TIME A DEFENDANT VIEWS ANY OF THEIR CHILD PORNOGRAPHY

9            IMAGES CIRCULATING ON THE WEB.  NO CHILD SHOULD EVER

10           HAVE TO GROW UP WITH THE WORRIES OF PICTURES OF HER

11           RAPE EXISTING ON THE INTERNET.

12           "TO THIS DAY I'M STILL STRUGGLING WITH ALL OF THIS TO

13           FULLY UNDERSTAND THE LIFETIME IMPACT THIS CRIME WILL

14           HAVE ON THEM.

15           "AS FAR AS THIS DEFENDANT IS CONCERNED, THERE IS NO

16           WAY TO ERASE THE CONTINUED PAIN AND SUFFERING THIS

17           DEFENDANT HAS INFLICTED ON OUR FAMILY BY POSSESSING

18           MY DAUGHTER'S IMAGES.  I WOULD BEG THE JUDGE TO

19           CONSIDER THE FOLLOWING WHEN DECIDING TO AWARD SOME

20           COMPENSATION TO MY DAUGHTERS IN THIS CASE.

21           "WHEN THIS DEFENDANT DECIDED TO DOWNLOAD THE CHILD

22           PORNOGRAPHY IMAGES OF MY DAUGHTERS, HE HAD AN

23           OPPORTUNITY TO CHANGE HIS MIND.  HE DID NOT.  HE

24           COULD HAVE REPORTED THE CHILD PORNOGRAPHY IMAGES HE

25           FOUND ON THE INTERNET TO LAW ENFORCEMENT AUTHORITIES.
```

1          HE DID NOT.  HE MIGHT HAVE CONSIDERED THAT HE WAS

2          STEPPING OVER THE LINE OF WHAT IS LEGALLY AND MORALLY

3          ACCEPTED IN OUR SOCIETY.  HE DID NOT.  INSTEAD, HE

4          CONTINUED ON WITH HIS VIRTUAL ASSAULT OF MY

5          DAUGHTERS.

6          "I WOULD SUGGEST THAT ANY REGRET THIS DEFENDANT MIGHT

7          HAVE FOR COMMITTING THIS HEINOUS CRIME AND THE

8          ADVERSE EFFECTS IT MIGHT HAVE ON HIM AND HIS FAMILY

9          PALE IN COMPARISON TO THE PAIN AND SUFFERING IMPOSED

10         ON MY DAUGHTERS AND OUR FAMILY AS A WHOLE."

11     FROM THE LIGHTHOUSE SERIES.  THE VICTIM'S PSYCHOLOGIST

12     WRITES:

13         "AT TIMES SHE, THE VICTIM, HEARS CONVERSATIONS IN HER

14         HEAD.  NEITHER THERAPIST NOR MEDICATION HAVE EVER

15         BEEN ABLE TO STOP THE HEAD CHATTER.  OVER THE YEARS

16         THE CHATTER HAS INCREASED AND THE CHATTER IS

17         ACCOMPANIED WITH A FLASHBACK OF ABUSE AND TORTURE

18         OVER THE YEARS.  SHE NOTES THAT THESE PICTURES OCCUR

19         IN HER SLEEP AND HER WAKING HOURS.  NOTHING MUTES

20         THEM.

21         "INDEED, THEY BECOME MORE GRAPHIC AS SHE AGES.  SHE

22         IS SCARED AND PANICKED MOST OF THE TIME.  SOME PANIC

23         ATTACKS ARE SEVERE ENOUGH THAT SHE HAS GONE TO THE

24         HOSPITAL THINKING SHE'S HAVING A HEART ATTACK.  SHE

25         ADMITS TO LOSING TIME, AT LEAST A FEW TIMES A DAY."

```
 1        THE LATTER PORTIONS OF IT, AGAIN, THE VICTIM IN THE
 2   LIGHTHOUSE SERIES.
 3                "DEAR JUDGE:  BETWEEN THE AGES OF 3 AND 11 YEARS OLD,
 4                I WAS RAPED, MOLESTED, BEATEN, AND HUMILIATED.  MY
 5                ABUSE WAS PHOTOGRAPHED, VIDEOTAPED, SENT ALL OVER THE
 6                INTERNET FOR MEN AND WOMEN TO SEE AND GET OFF ON.  IF
 7                I DIDN'T PERFORM FOR THE CAMERA OR DIDN'T PERFORM
 8                RIGHT FOR THE CAMERA, I WAS HIT AND PUNISHED.  I WILL
 9                NEVER HAVE THAT PART OF MY LIFE BACK.  I WILL NEVER
10                HAVE BACK MY INNOCENT YEARS.
11                "I KNOW THAT MY IMAGE IS BEING DOWNLOADED AND WATCHED
12                BY THESE KIDDY PORN PERVERTS ALL ACROSS THE COUNTRY.
13                I WORRY THAT THEY KNOW WHO I AM.  I WORRY THAT THEY
14                WILL COME AND LOOK FOR ME.  I WORRY THAT THEY WILL
15                COME AND HURT MY FAMILY.
16                "I'M TERRIFIED THAT SOMEONE IS STOCKING ME.  I'VE
17                CHANGED MY APPEARANCE SO THEY CAN'T FIND ME, BUT I
18                STILL HAVE PANIC ATTACKS WHEN I THINK SOMEONE IS
19                LOOKING AT ME BECAUSE THEY RECOGNIZE ME FROM THE
20                INTERNET.
21                "I HAVE DIFFICULTY WORKING OR BEING IN PUBLIC BECAUSE
22                OF THE ANXIETY, AND WANT TO HIDE SOMEWHERE SAFE.  I
23                SUFFER FROM PTSD AND CHRONIC DEPRESSION.  I'M WORKING
24                ON GETTING BETTER, BUT KNOWING THAT THESE KIDDY PORN
25                PERVERTS ARE STILL DOWNLOADING MY IMAGES MAKES
```

1           RECOVERING MORE DIFFICULT AND IT PREVENTS THE WOUNDS

2           FROM HEALING."

3      A MALE VICTIM:

4           "I'M A MALE CHILD OF CHILD ABUSE AND CHILD

5           PORNOGRAPHY.  MY SEXUAL ABUSE OCCURRED FROM AGES 6 TO

6           12.  DURING THIS TIME MY VICTIMIZATION WAS DOCUMENTED

7           AND SHARED ACROSS THE COUNTRY AND IS CONTINUALLY

8           BEING SHARED.  IT'S KNOWN AS THE SPONGE BOB SERIES.

9           "THE IMAGES AND VIDEOS TAKEN OF ME SEXUALLY ABUSED

10          ARE ONE OF THE MOST WIDELY DISTRIBUTED MALE VICTIM

11          SERIES IN THE COUNTRY.  THE FACT THAT THE IMAGES ARE

12          OUT THERE AND ARE BEING SHARED EVERY DAY IS SOMETHING

13          THAT I THINK ABOUT AND HAVE TO DEAL WITH EVERY SINGLE

14          DAY OF MY LIFE.

15          "SINCE LEARNING ABOUT THE WIDELY-SHARED PORNOGRAPHY,

16          I'VE EXPERIENCED NEGATIVE CHANGES IN MY LIFE, MY

17          PERSONALITY, MY OUTLOOK ON LIFE AND THE WORLD, MY

18          ABILITY TO TRUST AND INTERACT WITH PEOPLE.  ONE OF

19          THE MAIN ISSUES I DEAL WITH IS ANGER, ESPECIALLY TO

20          MALE STRANGERS.  I'M NATURALLY SUSPICIOUS EVEN WHEN I

21          SEE PEOPLE IN GROCERY STORES OR WALKING AROUND MY

22          COMMUNITY.  I FEAR THAT SOMEONE HAS VIEWED THE

23          PORNOGRAPHY SHOWING MY ABUSE.  I FEAR I WILL BE

24          RECOGNIZED.

25          "THROUGH SOME THERAPY, I'M TRYING TO LEARN COPING

1      SKILLS, BUT IT'S HARD AND IT'S A DAILY STRUGGLE.  I

2      THINK ABOUT THE CHILD PORNOGRAPHY EVERY DAY.  THERE

3      IS NOT ONE DAY THAT GOES BY THAT I DON'T THINK WITH

4      HATRED ABOUT THE SICK AND DISGUSTING PEOPLE WHO VIEW,

5      TRADE, SAVE, AND GET OFF ON MY ABUSE WHEN I WAS JUST

6      A LITTLE KID AND COULDN'T DEFEND MYSELF.  IT'S

7      SICKENING.

8      "I FEEL THAT EVERY SINGLE CRIMINAL THAT IS FOUND WITH

9      MINE OR SOME OTHER CHILD'S IMAGES SHOULD BE HELD

10     ACCOUNTABLE FOR THE HIGHEST AMOUNT TO HELP US REPAIR

11     OUR LIVES.  EACH PERVERT WHO FINDS PLEASURE IN MY

12     CHILD ABUSE SHOULD SUFFER THE FULLEST CONSEQUENCES OF

13     THE LAW, BE THAT PRISON, STRICT PAROLE CONDITIONS,

14     RESTITUTIONS, COUNSELING, AND THEY SHOULD NEVER BE

15     ALLOWED TO BE ALONE WITH CHILDREN.

16     "MY IMAGES MAY NEVER BE TAKEN OFF OF THE INTERNET AND

17     MAY ALWAYS BE CIRCULATING ACROSS THIS COUNTRY, BUT IN

18     THIS CASE, WITH THIS DEFENDANT, I ASK FOR JUSTICE TO

19     BE SERVED.  PLEASE HEAR MY VOICE.  I KNOW IT IS

20     DIFFICULT FOR ME TO KNOW THERE ARE DEFENDANTS OUT

21     THERE LIKE THE ONE BEFORE YOU AT SENTENCING.  PLEASE

22     HOLD HIM ACCOUNTABLE FOR HIS HARM OF ME."

23   AND ONE LAST NOTE FROM JENNY.  THIS IS JUST THE JENNY

24 SERIES.

25     "I AM 18 NOW AND SO I AM WRITING THIS TO HAVE MY OWN

1          VOICE IN MY VICTIMIZATION WHEN I WAS A CHILD.  I WAS

2          ONLY SEVEN WHEN MY PREDATOR BEGAN MOLESTING ME AND

3          PHOTOGRAPHING ME.  IT WENT ON FOR TWO YEARS BEFORE

4          THEY FOUND HIM ON THE INTERNET SENDING PICTURES OF ME

5          TO MEN.  THEN THEY FOUND ME AFTER ARRESTING HIM, BUT

6          BY MY LIFE HAS NEVER BEEN THE SAME.

7          "I HAVE LIVED MY LIFE UNCOMFORTABLE WITH MEN AND BOYS

8          AROUND ME.  I AM CONSCIOUS OF MY CLOTHING AND MAKING

9          SURE NO ONE CAN SEE ANY PART OF ME.  I WORRY ABOUT

10         THE PICTURES OF ME THAT ARE OUT THERE AND I HATE THAT

11         OTHERS SEE THEM.  I HAVE FEARED OVER THE YEARS THAT

12         SOMEONE WOULD RECOGNIZE ME IN PUBLIC.  I WISH ONLY

13         THAT EVERY SINGLE ONE CAN BE FOUND AND DESTROYED SOME

14         DAY.

15         "IT IS UPSETTING THINKING ABOUT THEM AND I WANT THEM

16         TO GO TO JAIL FOR DOING IT.  NOT MANY PEOPLE KNOW

17         WHAT HAPPENED TO ME.  AND IF THEY KNOW ANYTHING, IT'S

18         NOT THE WHOLE TRUTH.  I DON'T WANT PEOPLE TO KNOW AND

19         I WANT TO FORGET IT, BUT I CAN'T DO THAT ALL THE

20         TIME.  I WANT TO SHUT OFF MY BRAIN SO MANY TIMES.

21         "I WENT TO THERAPY FOR A WHILE, BUT I STOPPED BECAUSE

22         I JUST WANT TO FORGET IT.  BUT WITH THE PICTURES

23         STILL OUT THERE, I CAN'T."

24      MS. MCCALL DID A YEOMAN'S JOB OF SANITIZING THE HORROR AND

25   THE UGLINESS OF WHAT THIS CRIME DEALS WITH.  WE READ ABOUT IT

1    IN NEWSPAPERS AND IT IS SANITIZED.  NO ONE QUITE UNDERSTANDS

2    IF YOU DON'T READ THE DETAILS HOW HORRIFIC THESE IMAGES ARE.

3        WHEN THE SENTENCING GUIDELINES TALK ABOUT TEN IMAGES, PART

4    OF THE REASON WHY THE SENTENCING GUIDELINES ARE OFF IS BECAUSE

5    PERHAPS THERE WAS A POINT IN TIME IN OUR HISTORY WHERE THINGS

6    WERE PHYSICAL.  NOW WITH THE COMPUTERS, PEOPLE GET HUNDREDS OF

7    IMAGES, BUT IN THIS CASE WE ARE NOT TALKING ABOUT HUNDREDS, WE

8    ARE TALKING ABOUT HUNDREDS OF THOUSANDS OF IMAGES.

9        AND AS I LISTENED TO MS. MCCALL TALK ABOUT THE NATURE OF

10   WHAT WE WERE DEALING WITH, I THOUGHT YET, AGAIN, HERE WE GO,

11   IT'S SANITIZED.

12       YOUR FRIENDS AND FAMILY DON'T HAVE QUITE AN UNDERSTANDING

13   OF WHAT YOU AND I KNOW AND THE LAWYERS.  FOR A NORMAL PERSON,

14   HAVING TO SEE THOSE VIDEOS IS HAUNTING.  AND I STRUGGLE WITH

15   WHETHER I SHOULD EDUCATE THE PEOPLE IN THE AUDIENCE, THE

16   PUBLIC.

17       THE DESCRIPTIONS OF THESE PHOTOS TALK ABOUT ACTS DONE TO

18   FIVE YEARS OLD, TO TODDLERS.  LEGS SPREED APART BEING ORALLY

19   COPULATED BY AN ADULT MALE.  CLIPS ATTACHED TO THE NIPPLES OF

20   THE CHILD, CHILDREN GRIMACING IN PAIN, CHILDREN WHO ARE

21   CUFFED, HANDS TIED TO BEDPOSTS, TAPE OVER THEIR MOUTH GAGGED

22   WHILE BEING PENETRATED WITH OBJECTS AND WITH ERECT PENISES.

23   CHILDREN FORCED TO DO THINGS WITH ANIMALS.  THE LIST GOES ON

24   AND ON IN HORRIFIC DETAIL.

25       PROBATION WAS NEVER AN ANSWER.  I AGREE THAT YOU NEED

```
1    HELP.  I AGREE THAT YOU NEED SOME KIND OF MENTAL COUNSELING.
2    I AGREE THAT THE SENTENCING GUIDELINES ARE OVERSTATED BECAUSE
3    THESE DAYS EVERYONE USES A COMPUTER, FOR INSTANCE.
4         I TAKE INTO CONSIDERATION THE FACT THAT YOU HAVE MADE SOME
5    ACTS THAT SUGGEST THAT PERHAPS YOU ARE BEGINNING TO GET IT.
6    BUT WITH SOME DEFENDANTS, THE QUESTION OF WHETHER OR NOT THEY
7    WILL REOFFEND IS PROVEN BY TIME TO BE A REMOTE POSSIBILITY.
8    IN YOUR CASE IT IS NOT.  I DO NOT KNOW WHETHER YOU WILL
9    REOFFEND.  I HAVE HAD MANY DEFENDANTS STAND HERE AND TELL ME,
10   "I WON'T DO IT AGAIN", BUT HERE YOU DID.
11        AND WHAT PEOPLE MAY OR MAY NOT RECOGNIZE IS THAT YOU
12   DIDN'T DO IT ONCE, YOU DID IT MANY TIMES, AND YOU HID IT.  AND
13   YOU NOT ONLY PUT IT ON YOUR COMPUTER, BUT YOU PUT IT ON OTHER
14   DEVICES.
15        SO TO SUGGEST THAT SOMEHOW THIS WAS JUST ABOUT YOUR
16   CLIENTS IS A FALLACY.  TO SUGGEST THAT ENGAGING IN A MARKET
17   FOR THE POSSESSION OF THIS INFORMATION THAT IT DOES NOT CREATE
18   ONGOING HARM TO THOSE CHILDREN NOW ADULTS IS ALSO A FALLACY.
19        AND WE AS A SOCIETY CANNOT CONDONE IT.  WE AS A SOCIETY
20   CANNOT SAY THAT IF YOU ENGAGE IN THIS CONDUCT AND, REMEMBER,
21   THE PEOPLE WHO DO THIS ARE FIRST TIME OFFENDERS, OLDER MEN WHO
22   WILL ALWAYS SIT THERE AND SAY, JUDGE, BUT I'M OLDER.  YES, YOU
23   ARE, LIKE EVERY OTHER DEFENDANT, OR VIRTUALLY EVERY OTHER
24   DEFENDANT WHO IS COMMITTING THESE CRIMES.
25        WE CANNOT SAY THAT THAT IS ENOUGH TO SUGGEST THAT SOMEHOW
```

1    YOU DO NOT SERVE A SENTENCE FOR COMMITTING THESE ACTS DESPITE

2    THE MENTAL CONSIDERATIONS.

3        I AM CHARGED WITH TRYING TO DETERMINE WHAT IS SUFFICIENT

4    BUT NOT GREATER THAN NECESSARY IN TERMS OF A SENTENCE.  AND IN

5    LIGHT OF YOUR FAMILY SUPPORT AND YOUR PRIOR ACTS IN THE

6    COMMUNITY, DESPITE WHAT I HAVE JUST SAID, MR. BRESLIN, I DO

7    HAVE HOPE.  I HAVE TO TELL YOU, AS A JUDGE, I MUST HAVE HOPE

8    OR I CAN'T GET THROUGH THE DAY.  I HAVE TO HAVE HOPE IN THE

9    HUMAN CONDITION AND SO I HAVE HOPE FOR YOU.

10       IN PART, AND THE REASON WHY I SAID SOME OF THESE THINGS IN

11   COURT TODAY IS HOPEFULLY YOUR FAMILY WILL UNDERSTAND THE

12   BRUTALITY OF WHAT IT WAS YOU WERE ENJOYING AND KEEP YOU AWAY

13   FROM IT AND KEEP YOU CLEAN IN WHAT IS A SCAR ON THIS NATION

14   AND A SCAR ON HUMANITY.  SO I HOPE THAT THEY WILL HELP YOU.

15       BUT THAT DOESN'T MEAN THAT I WILL SEND A MESSAGE TO OTHER

16   DEFENDANTS THAT YOU WILL GET A SLAP ON THE HAND IF YOU EVER DO

17   THIS.  WHILE THE GUIDELINES INDICATE THAT A SENTENCE SHOULD BE

18   IN THE RANGE OF 12 YEARS AND SEVEN MONTHS TO 15 YEARS AND

19   EIGHT MONTHS, I FIND THAT TO BE MORE THAN IS REASONABLY

20   NECESSARY.

21       BASED UPON MY DISCRETION AND THE CONSIDERATIONS THAT I

22   HAVE INDICATED, INCLUDING THE OFFENSE CONDUCT BETWEEN THE

23   FIRST INDICTMENT AND THE SUPERSEDING INDICTMENT, THE

24   STATEMENTS ON THE TELEPHONE, HIS EARLY REFUSAL AND LACK OF

25   REMORSE, BUT IN LIGHT OF HIS LIFELONG CONTRIBUTIONS AND GOOD

1   WORKS AND THE HELP OF HIS FAMILY ONCE HE WAS RELIEVED FROM HIS

2   CUSTODIAL SENTENCE WHICH WE HOPE WILL PROVE AND HELP HIM

3   REFLECT ON WHAT HE HAS DONE;

4         PURSUANT TO THE SENTENCING REFORM ACT, IT IS THE JUDGMENT

5   OF THIS COURT THAT KENNETH BRESLIN BE COMMITTED TO THE BUREAU

6   OF PRISONS FOR A TERM OF 78 MONTHS.  THIS TERM CONSISTS OF 78

7   MONTHS ON EACH OF COUNTS ONE AND TWO CONCURRENT.

8         IN ADDITION, I'LL IMPOSE ONE DAY ON COUNT THREE TO RUN

9   CONSECUTIVE TO COUNTS ONE AND TWO FOR A TOTAL OF 78 MONTHS AND

10  ONE DAY.

11        UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT SHALL BE

12  PLACED ON SUPERVISED RELEASE FOR A TERM OF FIVE YEARS.  THE

13  TERM CONSISTS OF FIVE YEARS ON EACH OF COUNTS ONE AND TWO, AND

14  THREE YEARS ON COUNT THREE, ALL SUCH TERMS TO RUN

15  CONCURRENTLY.

16        WITHIN 72 HOURS OF RELEASE FROM THE BUREAU OF PRISONS, THE

17  DEFENDANT SHALL BE -- SHALL REPORT IN PERSON TO THE PROBATION

18  OFFICE IN THE DISTRICT IN WHICH HE IS RELEASED.  WHILE ON

19  SUPERVISED RELEASE, THE DEFENDANT SHALL NOT COMMIT ANOTHER

20  FEDERAL, STATE, OR LOCAL CRIME; SHALL COMPLY WITH STANDARD

21  CONDITIONS ADOPTED BY THIS COURT, EXCEPT THAT THE MANDATORY

22  DRUG TESTING PROVISION IS SUSPENDED GIVEN THERE IS NO HISTORY

23  OF DRUG ABUSE.

24        I SHALL IMPOSE A MANDATORY SPECIAL ASSESSMENT OF $10,000

25  PURSUANT TO TITLE 18 OF THE UNITED STATES CODE AT SECTION

3014, PLUS A MANDATORY ASSESSMENT OF $300.

    IN ADDITION, THE COURT WILL ACCEPT THE STIPULATION OF THE PARTIES WITH RESPECT TO RESTITUTION AMOUNT OF $100,000 PAYABLE $4,000 PER EACH OF THE VICTIMS SPECIFICALLY IDENTIFIED IN THAT DOCUMENT INCLUDING THE PAYMENT ADDRESSES.

    **MR. GOLDROSEN:**  YOUR HONOR, MAY I CORRECT?  THERE WERE 21 VICTIMS AT 4,000.  THERE'S ONE AT 1,000.  SO IT'S 85,000 TOTAL.

    **THE COURT:**  SO ORDERED AND NOTED.  THANK YOU.

    YOU MUST PROVIDE PROBATION WITH ACCESS TO ANY FINANCIAL INFORMATION, INCLUDING TAX RETURNS, AND MUST AUTHORIZE PROBATION TO CONDUCT CREDIT CHECKS AND OBTAIN COPIES OF TAX RETURNS.

    YOU SHALL COOPERATE IN THE COLLECTION OF DNA AS DIRECTED BY PROBATION.  FOR THE REST OF YOUR LIFE, MR. BRESLIN, YOU MAY NOT AND SHALL NOT OWN OR POSSESS ANY FIREARMS, AMMUNITION, DESTRUCTIVE DEVICES, OR OTHER DANGEROUS WEAPONS.

    YOU ARE REQUIRED TO SUBMIT YOUR PERSON, RESIDENCE, OFFICE, VEHICLE, ELECTRONIC AND THEIR DATA, INCLUDING CELL PHONES, COMPUTERS, AND ELECTRONIC STORAGE MEDIA, OR ANY PROPERTY UNDER YOUR CONTROL TO SEARCH.  SUCH A SEARCH MUST BE CONDUCTED BY A UNITED STATES PROBATION OFFICER OR ANY FEDERAL, STATE, OR LOCAL LAW ENFORCEMENT OFFICER AT ANY TIME OF THE DAY OR NIGHT WITH OR WITHOUT CAUSE, WITH OR WITHOUT SUSPICION.  FAILURE TO SUBMIT TO THIS KIND OF SEARCH CAN BE GROUNDS FOR REVOCATION.

1    YOU MUST WARN RESIDENTS WITH WHOM YOU LIVE THAT YOU ARE

2    SUBJECT TO THAT PROVISION.

3       DO YOU UNDERSTAND?

4              **THE DEFENDANT:**  YES.

5              **THE COURT:**  YOU MUST NOT POSSESS OR USE A COMPUTER

6    WITHOUT THE PRIOR APPROVAL OF THE PROBATION OFFICE.  COMPUTER

7    INCLUDES THE ELECTRONIC -- ANY ELECTRONIC DEVICE CAPABLE OF

8    ACCESSING THE INTERNET OR PROCESSING OR STORING DATA AS

9    DESCRIBED IN TITLE 18 OF THE UNITED STATES CODE, SECTION

10   1030(E)(1), INCLUDING CELL PHONES AND SMART TELEVISIONS, AND

11   ALL PERIPHERAL DEVICES.

12      AS DIRECTED BY PROBATION, YOU MUST ENROLL IN THE PROBATION

13   OFFICE'S COMPUTER AND INTERNET MONITORING PROGRAM, AND YOU

14   MUST ABIDE BY ALL CONDITIONS AND REQUIREMENTS OF THAT PROGRAM

15   AND THE ACCEPTABLE USE CONTRACT.

16      YOU MUST NOT ACCESS THE INTERNET OR ANY ONLINE COMPUTER

17   SERVICE AT ANY LOCATION, INCLUDING YOUR EMPLOYMENT, WITHOUT

18   PRIOR APPROVAL OF THE PROBATION OFFICE.  ONLINE SERVICES

19   INCLUDE ANY INTERNET SERVICE PROVIDER OR ANY PUBLIC OR PRIVATE

20   COMPUTER NETWORK.  AS DIRECTED BY PROBATION, YOU MUST WARN

21   YOUR EMPLOYER OF ANY RESTRICTIONS ON YOUR COMPUTER USE.

22      YOU MUST CONSENT TO THE PROBATION OFFICER CONDUCTING

23   PERIODIC UNANNOUNCED EXAMINATIONS OF ANY COMPUTER EQUIPMENT

24   WHICH MAY INCLUDE RETRIEVAL AND COPYING OF ALL DATA FROM YOUR

25   COMMUTER AND ANY PERIPHERAL DEVICE TO ENSURE WITH THIS

1    CONDITION AND/OR REMOVAL OF SUCH EQUIPMENT FOR THE PURPOSE OF

2    CONDUCTING A MORE THOROUGH INSPECTION.

3        YOU MUST CONSENT TO THE INSTALLATION OF ANY HARDWARE OR

4    SOFTWARE AS DIRECTED BY PROBATION TO MONITOR ANY AUTHORIZED

5    USE OF THE INTERNET.

6        YOU MUST NOT POSSESS ANY DATA ENCRYPTION TECHNIQUE OR

7    PROGRAM THAT IS NOT AUTHORIZED BY PROBATION.

8        YOU MUST NOT POSSESS IN ANY FORM MATERIALS DEPICTING CHILD

9    PORNOGRAPHY, CHILD EROTICA, OR NUDE OR SEXUAL DEPICTIONS OF

10   ANY CHILD, OR ANY MATERIALS DESCRIBED AT TITLE 18 TO THE

11   UNITED STATES CODE AT SECTION 2256 SUBSECTION 8.

12       YOU MUST NOT ACCESS, VIA THE INTERNET OR OTHERWISE, ANY

13   PORNOGRAPHY, OR OTHER MATERIALS DEPICTING SEXUALLY EXPLICIT

14   CONDUCT AS DEFINED BY TITLE 18 OF THE UNITED STATES CODE AT

15   SECTION 2256, SUBSECTION 2 WITHOUT THE PRIOR APPROVAL OF

16   PROBATION.

17       YOU MUST NOT LOITER OR FREQUENT WITHIN 100 FEET OF ANY

18   LOCATION WHERE CHILDREN ARE LIKELY TO GATHER, OR HAVE ANY

19   CONTACT WITH ANY CHILD UNDER THE AGE OF 18 UNLESS OTHERWISE

20   APPROVED BY THE PROBATION OFFICE.

21       CHILDREN ARE LIKELY TO GATHER IN LOCATIONS INCLUDING, BUT

22   NOT LIMITED TO, PLAYGROUNDS, THEME PARKS, PUBLIC SWIMMING

23   POOLS, SCHOOLS, ARCADES CHILDREN'S MUSEUMS OR OTHER SPECIFIC

24   LOCATIONS AS DESIGNATED BY PROBATION.  THIS PROVISION DOES NOT

25   ENCOMPASS PERSONS UNDER THE AGE OF 18 SUCH AS WAITERS,

1   CASHIERS, TICKET VENDORS WITH WHOM YOU MUST DEAL IN ORDER TO

2   OBTAIN ORDINARY AND USUAL COMMERCIAL SERVICES.

3       ANY EMPLOYMENT SHALL BE APPROVED BY PROBATION, AND ANY

4   CHANGE IN YOUR EMPLOYMENT MUST BE PRE-APPROVED BY PROBATION.

5   YOU MUST SUBMIT THE NAME AND ADDRESS OF ANY PROPOSED EMPLOYER

6   TO PROBATION AT LEAST TEN DAYS PRIOR TO YOUR SCHEDULED CHANGE.

7       YOUR RESIDENCE SHALL BE APPROVED BY PROBATION AND ANY

8   CHANGE IN THE RESIDENCE MUST BE PRE-APPROVED BY PROBATION.

9   YOU MUST SUBMIT THE ADDRESS OF ANY PROPOSED RESIDENCE TO THE

10  PROBATION OFFICER AT LEAST TEN DAYS PRIOR TO ANY SCHEDULED

11  CHANGE.

12      YOU MUST REGISTER WITH THE STATE SEX OFFENDER REGISTRATION

13  AGENCY AS REQUIRED UNDER STATE LAW.  AND IF SO REQUIRED, MUST

14  PROVIDE PROOF OF REGISTRATION TO PROBATION OFFICE WITHIN THREE

15  DAYS OF RELEASE FROM IMPRISONMENT ON SUPERVISION.

16      YOU MUST PARTICIPATE IN THE SEX OFFENDER TREATMENT PROGRAM

17  AS DIRECTED BY PROBATION.  YOU ARE HEREBY ORDERED TO PAY ALL

18  OR PART OF THE COST OF THAT TREATMENT, BUT THE COST SHALL NOT

19  EXCEED THE -- IN AN AMOUNT NOT TO EXCEED THE ACTUAL COST OF

20  THE TREATMENT.  ANY CO-PAYMENT SHALL BE DETERMINED BY

21  PROBATION.  THE PROBATION OFFICER MAY RELEASE ALL PREVIOUS

22  MENTAL HEALTH EXAMINATIONS AND EVALUATIONS TO THE TREATMENT

23  PROVIDER.

24      AS PART OF THE PROGRAM TREATMENT, YOU MUST SUBMIT TO A

25  POLYGRAPH TESTING AS RECOMMENDED BY THE TREATMENT PROVIDER.

1   HOWEVER, YOU RETAIN YOUR FIFTH AMENDMENT RIGHT TO REFUSE TO

2   ANSWER QUESTIONS ASKED DURING THE COURSE OF TREATMENT ABSENT A

3   GRANT OF USE OR DERIVATIVE-USE IMMUNITY.

4        AS PART OF THE TREATMENT PROGRAM, YOU MUST SUBMIT TO

5   PSYCHOLOGICAL TESTING AS RECOMMENDED BY THE TREATMENT

6   PROVIDER.

7        THE FOLLOWING ARE HEREBY FORFEITED TO THE UNITED STATES:

8   SANDISK THUMB DRIVE 16 GIGABYTES MODEL SDCZ30, MEMOREX TRAVEL

9   DRIVE USB THUMB DRIVE, 512 MEGABYTES GRAY IN COLOR,

10  HEWLETT-PACKARD LAPTOP COMPUTER, SERIAL NUMBER CND6354J2T, AND

11  A SANDISK ULTRA USB 3, 128 GIGABYTE THUMB DRIVE, SERIAL NUMBER

12  4C530001230919119322.

13       THE COURT HEREBY RECOMMENDS TO THE BUREAU OF PRISONS THAT

14  MR. BRESLIN BE PLACED IN A SEX OFFENDER TREATMENT PROGRAM AND

15  THAT HE BE PLACED AT A FACILITY AS CLOSE TO THE BAY AREA AS

16  POSSIBLE.

17       TO THE EXTENT THAT THEY ARE NOT ABLE TO ACCOMMODATE THE

18  COURT'S REQUEST WITHIN 30 DAYS OF PLACEMENT, THE BUREAU OF

19  PRISONS SHALL ADVISE THE COURT WHY THEY WERE NOT ABLE TO HONOR

20  MY REQUEST THAT HE BE PLACED CLOSE TO HIS FAMILY.

21       IS THERE ANYTHING ELSE?

22            **MR. GOLDROSEN:**  NO, YOUR HONOR.

23            **MS. MCCALL:**  NO, YOUR HONOR.

24            **THE COURT:**  MR. BRESLIN, DESPITE MY TOUGH WORDS, I

25  HOPE YOU UNDERSTAND THAT I DO WISH YOU WELL ULTIMATELY.

1          **THE DEFENDANT:**  THANK YOU.

2          **THE COURT:**  WE ARE ADJOURNED.

3

4              (PROCEEDINGS ADJOURNED AT 3:52 P.M.)

5

6

7                  **CERTIFICATE OF REPORTER**

8          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

9    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

10   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

11   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12

13                    _Diane E. Skillman_

14          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

15               THURSDAY, JULY 26, 2018

16

17

18

19

20

21

22

23

24

25