# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>vs.<br>**KENNETH BRESLIN,**<br>Defendant. | CASE NO. 16-cr-00515-YGR-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br>Re: Dkt. No. 92 |

On May 25, 2018, this Court sentenced defendant Kenneth Breslin to a term of 78 months and one day in the custody of the Bureau of Prisons ("BOP"), and 5 years of supervised release, on two charges of possession of child pornography, in violation of 18 U.S.C. section 2252(a)(4)(B), and one count of criminal contempt while on release, in violation of 18 U.S.C. section 401(3). Breslin was remanded into federal custody on September 7, 2017 and is serving his sentence at FCI Big Spring in Big Spring, Texas. His projected release date is March 20, 2023. Breslin brings the instant motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A). The government opposes the motion.[1]

Section 3582 provides that a "court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). After considering the sentencing factors from 18 U.S.C. section 3553(a) "to the extent that they are applicable," a court may grant a motion to reduce a sentence under two circumstances, one of which is "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(i). The relevant United States Sentencing Guidelines state that "extraordinary and compelling reasons"

---

[1] The parties do not dispute that the Court has jurisdiction to review the motion, that is, more than 30 days have lapsed since Breslin's May 18, 2020 request for relief to the warden.

include: (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. USSG § 1B1.13, Application Note 1(A). The Guidelines also require that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).[2]

Breslin argues that compassionate release is justified because he is particularly vulnerable to contracting and becoming seriously ill from COVID-19. Breslin points out that he is 71 years old and suffers from myriad medical problems, including Type 2 diabetes mellitus with diabetic neuropathy, hyperlipidemia, and gastro-esophageal reflux disease without esophagitis. In addition, he had tuberculosis as an infant, and a recent chest x-ray revealed findings consistent with remote reactivation tuberculosis. Chest x-rays and CT scans have also indicated other abnormalities, including tracheal deviation, scarring, and lymphadenopathy. Breslin was treated for respiratory illnesses at Big Spring in September 2018, January 2019, and May 2019. As the government appears to concede, Breslin's chronic medical condition and the risk of contracting COVID-19 in the custodial setting may constitute an extraordinary and compelling reason to grant a motion for compassionate release.

The government argues that the motion should be denied, however, for three reasons: first, because Breslin's medical records show that he is receiving regular treatment and medications for his health impairments; second, because at the time of briefing, no inmates had tested positive for COVID-19 at FCI Big Spring; and third, because he remains a danger to the community.

With respect to the first argument, the government provides no authority for the proposition that the provision of standard health services for chronic conditions meaningfully

---

[2] The current guidelines were promulgated prior to the enactment of the Fair Sentencing Act. The continued applicability of those guidelines is a subject of conflicting authorities. *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements [after the enactment of the FSA], courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant' compassionate release." (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). The Court need not decide the issue since it finds consideration of the factors stated in the existing guidelines useful in its exercise of discretion herein.

reduces an inmate's likelihood of contracting and suffering serious illness or death from COVID-19.  Indeed, the Court is mindful of the unprecedented nature of the COVID-19 pandemic and the particular health risks it presents, especially within the jail and prison setting and despite efforts by certain facilities to control the spread of the virus.

Similarly, the government's argument regarding the low positivity rate at FCI Big Spring fails to persuade.  In its opposition, the government emphasizes that as of July 13, 2020, zero inmates at the facility had tested positive for COVID-19.  As of August 7, 2020, however, three inmates had tested positive.  Moreover, approximately 12 percent of the inmate population at FCI Big Spring has completed COVID-19 tests.[3]  A low positivity rate carries little weight where only a fraction of inmates have been tested.  *See United States v. Sarkisyan*, No. 15-CR-00234-CRB-15, 2020 WL 2542032 at *2 (N.D. Cal. May 19, 2020) ("If the Government wishes to argue that early release in this case (or any other case before this Court) is inappropriate because the defendant's facility has no reported cases of COVID-19, that claim must be adequately supported with actual test results from testing conducted by the Bureau of Prisons.").  Additionally, there are at least six staff members who have tested positive for the virus and who may have transmitted it to others in the facility.

Finally, the Court addresses the government's concerns regarding the dangers of release.  The Court has reviewed its file in this matter thoroughly and takes extremely seriously the conduct for which Breslin is serving time, including his willful violation of the terms of his pretrial release, as well as its impact on survivors of these crimes.  At the same time, the Court takes note of the opinion of Dr. Charles Flinton, whose evaluation of Breslin was submitted to the Court at sentencing, that "child pornography offenders typically re-offend at a very low rate."[4]  A 2016 study published by the Probation and Pretrial Services Offices similarly made findings consistent with research showing that "offenders convicted of child pornography have fewer risk characteristics and recidivate less frequently compared to contact sex offenders."[5]  Further, Breslin

---

[3] BOP, available at https://www.bop.gov/coronavirus/ (last visited 8/7/20).

[4] Dkt. No. 70 at 16.

[5] Thomas H. Cohen, et al., *How Dangerous Are They? An Analysis of Sex Offenders under*

3

has no prior criminal record, does not appear to have violated institutional rules at FCI Big Spring, and has completed at least some coursework while incarcerated. The Court finds that these factors, when considered in the context of Breslin's age and significant health issues that render him vulnerable to serious illness or death due to COVID-19, ultimately tip the balance in favor of granting the motion.

Accordingly, the Court **GRANTS** the motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) and **ORDERS** as follows:

1. Breslin's sentence of imprisonment is modified to time served and he is ordered to be released on August 12, 2020 at 10:00 a.m. local time. The Court directs the BOP to commence immediately the process of releasing Breslin from custody, and the United States Attorney's Office and United States Probation Office are directed to take all steps communicate and facilitate Breslin's release.

2. The remaining portion of the original term of imprisonment shall be served as supervised release with the special condition that Breslin shall be subject to home confinement at 57 Hill Road, Berkeley, CA 94708 for a period of 730 days following his release. During the period of home confinement, Breslin shall be subject to the following conditions:

   a. Breslin must participate in the Location Monitoring Program as directed by the probation officer for a period of 730 days, and be monitored by location monitoring technology at the discretion of the probation officer. Location monitoring shall be utilized to verify Breslin's compliance with home incarceration while on the program. He is restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by the Court. Breslin shall pay all or part of the costs of the program based upon his ability to pay as determined by the probation officer.

   b. Any change to Breslin's residence will be subject to advanced approval by the probation officer. Any transfer of jurisdiction must be approved in advance by the Court.

3. Following his release from custody, Breslin shall immediately relocate directly to the

---

*Federal Post-Conviction Supervision*, 80 Fed. Probation 2 at 30 (Sept. 2016).

4

Berkeley residence.  Commencing at the time of his arrival at the Berkeley residence, Breslin must self-quarantine at the residence for a period of fourteen (14) days.  Within 72 hours of release from custody, Breslin shall contact the United States Probation Office to begin the reentry process.

4. Breslin shall comply with the conditions of release and supervision set forth in the Judgment (Dkt. No. 80).

5. The government shall serve a copy of this order on the Warden at FCI Big Spring forthwith.

This Order terminates Docket Number 92.

**IT IS SO ORDERED.**

Dated: August 10, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**